In re David Paul LATCHAW and Judy
E. Latchaw, Debtors.

In re William Edward HENDERSON I
and Priscilla Lynne Henderson, aka
Cilla Lynne Henderson, Debtors.

Bankruptcy Nos. 581–1602, 581–714.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 8, 1982.

Jerome Holub, Akron, Ohio, Chapter 13
Trustee.

· Carl Hirsch, Akron, Ohio, for debtor,
Henderson.

Jeffrey Heintz, Akron, Ohio, for debtor,
Latchaw.

George Dietrich and Gary W. Spring, Ak-
ron, Ohio, for Metro.

FINDING AS TO METRO REGIONAL
TRANSIT AUTHORITY

H.F. WHITE, Bankruptcy Judge.

These cases are being joined for decision
as they involve the same issues of law.

Case No. 581–714, involving debtor, Pris-
cilla Lynne Henderson, is before the Court

on the Application of the Trustee, Jerome L. Holub, for an order requiring the Metro Regional Transit Authority to appear and show cause why the Order of this Court relating to a wage deduction should not be continued so long as Debtor's Chapter 13 Plan is in effect.

Case No. 581–1602, David Paul Latchaw and Judy E. Latchaw, Debtors, is before the Court on Debtors' motion for an order permanently enjoining Metro Regional Transit Authority (hereinafter referred to as "Metro") from taking disciplinary action against Debtor, David Latchaw, due to the wage deduction in effect in said case and the support deduction order from the Summit County Domestic Relations Court.

The matters each came on for hearing in July, 1982. On September 10, 1982, a Stipulation of Fact was filed in both cases. Both parties thereafter filed legal briefs on the issues.

## FINDING OF FACTS

The facts in this case, as stipulated to by the parties, and as found by this Court, are as follows:

1. The Debtors filed Petitions pursuant to Chapter 13 of Title 11 U.S.C.

2. The Debtors filed Plans of Arrangement regarding the repayment of their indebtedness pursuant to Title 11 U.S.C. Section 1321. The Plans contained those provisions required by Title 11 U.S.C. Section 1322 and the Plans were duly confirmed pursuant to 11 U.S.C. Sections 1324 and 1325.

3. The Debtors are employees of Metro, a quasi-governmental entity created and maintained pursuant to Ohio Revised Code Section 306.30 et seq., and are members of Local # 1 of the Transport Union of America, AFL–CIO, the duly authorized bargaining agent for employees of Metro.

4. Pursuant to Title 11 U.S.C. Section 1325(b), Metro, as employer of the Debtors, was ordered to pay a part of the Debtors' income to the Chapter 13 trustee in order to fund the Chapter 13 Plans of Arrangement proposed by the Debtors and confirmed by the Court.

5. The payment of a portion of the Debtors' income to the Chapter 13 Trustee has been provided for in Debtors' Plans.

6. Article XIX, Section 2 of the Collective Bargaining Agreement between the Transport Workers' Union and Metro provides that:

The Union agrees that the Company has the right to make and enforce such rules and regulations as it deems necessary to assure the safe and orderly performance of its operations, provided, however, that such rules and regulations shall be promulgated after consulting with the Union and shall not abridge the employee's rights under this Agreement.

7. Metro adopted a policy "that prohibits continual garnishments (wage assignments) against employee wages or salaries." Included in Metro's definition of garnishments are Chapter 13 wage deductions, support orders issued by the Domestic Relations Court, alimony orders issued by the Domestic Relations Court, and wage garnishments.

8. This rule regarding garnishments was enacted in furtherance of the orderly performance of the operation of Metro and to alleviate the administrative tasks encountered in making these payroll deductions.

9. Metro intends to discipline the Debtors in part because of the Chapter 13 deductions ordered by this Court. Such discipline could include ultimate discharge of the Debtors. Metro will not discharge anyone for a Chapter 13 deduction alone, but does count such a deduction as a garnishment under its policy and it, along with another garnishment order, can serve as the basis for discharge.

10. Metro has and will continue to obey all Chapter 13 orders regarding payroll deductions that must be made from the wages of its employees.

11. Metro is subject to the jurisdiction of this Court for all purposes with respect to service and enforcement of payroll deduction orders.

12. The Debtor, David Latchaw, is subject to a support order in the amount of $40.40 per week issued by the Domestic Relations Division of the Court of Common Pleas, Summit County, Ohio, which amount is also being deducted from his wages by Metro pursuant to O.R.C. 3113.21.

13. Metro is subject to the jurisdiction of the Court of Common Pleas, Summit County, Ohio for all purposes relative to service and enforcement of the support order referenced above.

14. The Debtors' wages are property of the Chapter 13 estate pursuant to Title 11 Section 541 and Title 11 U.S.C. Section 1306.

15. The Debtors have complied with all mandatory provisions of Title 11 U.S.C. Section 1322 and their plans meet all the mandatory provisions of that statutory section.

## ISSUE

The issue presented is whether Metro may take disciplinary action against Debtors, David Latchaw and Priscilla Henderson, for filing bankruptcy petitions and Plans under Chapter 13 of the Bankruptcy Code which require wage deductions to be made by Metro and then remitted to the Chapter 13 Trustee.

## LAW

Metro claims the right, pursuant to rules adopted by it, to discipline, and ultimately, to discharge Debtors, David Latchaw and Priscilla Henderson, for the wage deductions being made by Metro under an order of this Court. Debtors, David Latchaw and Judy Latchaw, and the Chapter 13 Trustee, on behalf of Debtor, Priscilla Henderson object to Metro taking any disciplinary measures against either debtor—bus driver.

11 U.S.C. Section 1325(b) authorizes this Court "After confirmation of a plan ... [to] ... order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." In accordance with this section, this court has ordered Metro to make deductions from the wages of Debtors, David Latchaw and Priscilla Henderson, and remit said monies to the Chapter 13 Trustee for distributions to creditors.

These deduction orders were made in accordance with the general practice in Chapter 13 cases in this Court. The wage order enables a debtor to pay all or part of his debts as set forth in his Plan, receive a discharge, and, as a result, a "fresh start" in his economic life. At the same time, the wage deduction orders allow the Chapter 13 Trustee to receive the monies he is required to be paid under the nearly 2,000 Chapter 13 cases now pending before this court without the burden of monitoring the Debtors themselves for payment. This Court can well imagine the chaos which would occur and the added burdens which would be placed upon the Chapter 13 Trustee if, in lieu of wage deduction orders upon debtors' employers, payments in Chapter 13 cases to the Trustee were made by the Debtors themselves.

Metro is not refusing to comply with the wage deduction orders. Instead, it claims that a Chapter 13 wage deduction is a garnishment under its rules on garnishments and that it, along with another garnishment, can result in an employee being terminated for just cause. The garnishment policy also provides that even without another garnishment, a debtor is subject to a three-day suspension and "further progressive discipline" should the Chapter 13 deductions continue. (See Exhibit "A" to Stipulation of Facts).

The issue thus presented is whether Metro may discipline its employees for Chapter 13 wage deductions where the disciplinary action contemplated includes discharge. This Court holds that it may not. In so holding, this Court initially finds that Metro is a governmental unit under the definition of that term in the Bankruptcy Code.

11 U.S.C. section 101(21) defines governmental unit as meaning:

United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or in-

strumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government; The Legislative History for this subsection states that "Paragraph (20)[1] defines 'governmental unit' in the broadest sense." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 311 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6268.

In *In Re Marine Electric Railway Products Division,* 17 B.R. 845 (Bkrtcy.E.D.N.Y. 1982), it was held that a city transit authority was a governmental unit under the broad definition of that term set forth in 11 U.S.C. Section 101(21). The Court looked to the fact that the transit authority there involved was a city agency and subdivision of the Metropolitan Transportation Authority, a state agency.

Ohio Revised Code Section 306.30 et seq. deals with the regional transit authority in Ohio. Such an authority is authorized to be created by Ohio Revised Code Sections 306.-31 and 306.32. A resolution of the board of county commissioners, the legislative authority of each municipality and the board of township trustees of each township which is to create a regional transit authority is necessary in order to create the transit authority. Ohio Revised Code Section 306.-32. The regional transit authority so created is a political subdivision of the State of Ohio. Ohio Revised Code Section 306.31. It is given the power of eminent domain to the extent "necessary or proper for the construction or efficient operation of any transit facility or access thereto ..." Ohio Revised Code Section 306.36. The authority's operations are funded partially through tax levies and federal funding. In light of this, this Court concurs with the decision in *In Re Marine Electric Railway Products Division, supra.* to the extent that it held

that a city transit authority is a governmental unit.

As a governmental unit, 11 U.S.C. Section 525 applies to Metro. That section states, in part, that:

... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[2]

Under this section, Metro, as a governmental unit, may not terminate or discriminate with respect to the employment of debtors because of the fact that they have filed for relief under the bankruptcy laws. Yet this is precisely what Metro proposes to do.

As to Debtor, David Latchaw, under Metro's policy, Metro will be able to terminate said Debtor's employment immediately following a denial of Debtor's motion for injunction. Under Metro's policy, termination for just cause may follow a second garnishment in a twelve-month period where the two garnishments are for separate indebtedness.

1. As enacted, the term "governmental unit" is defined in Paragraph 21 of 11 U.S.C. Section 101.

2. 11 U.S.C. Section 525 contains three exceptions which are not relevant in this case. Thus, this section does not apply where provided in the Perishable Agricultural Commodities Act,

1930 (7 U.S.C. §§ 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. §§ 181–229) and Section 1 of the Act entitled "an Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. § 204).

In the case of David Latchaw, two garnishments for separate indebtedness exist. The first garnishment, under Metro's definition of that term, is the monthly deduction for Chapter 13 payments. The second garnishment is a support deduction ordered by the Summit County Common Pleas Court, Domestic Relations Division pursuant to O.R.C. 3113.21. Both occurred, and are continuing to occur, within one twelve-month period. The garnishments are for separate indebtedness—the former for debts scheduled in Debtor's bankruptcy petition and the latter for support payments for Debtor, David Latchaw's, minor children.

As such, Metro's policy is such that Debtor, David Latchaw, may be terminated due to his status as a Chapter 13 Debtor. Such a termination, however, would be in direct violation of 11 U.S.C. Section 525. Accordingly, such an action may not be taken.

Nor may Metro suspend these Debtors, David Latchaw and Priscilla Henderson, for three days or take "further progressive discipline" against debtors due to the wage deductions. To do so is to discriminate against these Debtors based on the fact that they have filed under the bankruptcy laws, in violation of 11 U.S.C. Section 525.

In the case of Debtor, Priscilla Henderson, the two garnishments based on separate indebtedness have not occurred. Thus, discharge is not possible on that basis. However, Metro's policy allows it to take further progressive discipline against a debtor where continual garnishments on the same debt are made as they will be in this case for the life of the Plan. Of course, the ultimate in "progressive discipline" is discharge.

The threat of discharge, or even the threat of continuous short-term suspensions, is a serious and substantial threat to the economically beleaguered debtor. Such a threat, in light of today's job market and economic conditions, could have the undesired result of forcing debtors to convert to Chapter 7 in order to preserve their jobs. Such a result would interfere with the Congressional intent as expressed in Chapter 13 of the Bankruptcy Code to afford the debtors the ability to continue to support themselves and their dependents while paying off their debts free from direct and indirect pressure of their creditors. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 118 (1977).

As early as 1968, the Congress of the United States, in enacting the Consumer Credit Protection Act, 15 U.S.C. 1601 et seq., was concerned as to the harsh results occurring to wage earners from garnishments that threatened the debtor's entire weekly pay check as occurred in Ohio prior to the enactment of that statute. In 15 U.S.C. Section 1673 Congress set forth restrictions on the amount of a garnishment which could be made from a debtor's wage. In subparagraph (b)(1), Congress set forth the following exceptions:

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

(B) any order of any court of the United States having jurisdiction over cases under chapter 13 of Title 11.

In Section 1674 Congress further provided under subsection (a): "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness."

Metro relies on the case of *In Re Jackson*, 424 F.2d 1220 (7th Cir.1970) wherein it was held that the Bankruptcy Act did not authorize the issuance of an injunction against the discharge of a Chapter XIII debtor employed by International Harvester. Like Metro, International Harvester threatened to discharge a Chapter XIII debtor if he did not have the wage deduction order there in question released.

Metro's reliance on *Jackson* fails to take into consideration several things however. Initially, and most importantly, Metro is a governmental unit and not a private corporation as was International Harvester. Because of this, Metro is subject to 11 U.S.C. Section 525 and its prohibitions against ter-

mination and discrimination in employment of bankruptcy debtors.

11 U.S.C. Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Surely an order enjoining an employer from suspending, discharging, or taking other disciplinary measure against its employees is necessary or appropriate where the wages earned from said employment are used to fund a Plan which has been confirmed by this Court.

As a governmental unit, Metro is prohibited from discharging or discriminating in the employment of a debtor in this Court. Metro's policy with respect to garnishments is in violation of 11 U.S.C. Section 525 and Section 1325(b).

Therefore, it is the conclusion of this Court that Metro Regional Transit Authority should be enjoined from taking any disciplinary action against Debtors, David Latchaw and Priscilla Henderson, due to their status as Chapter 13 Debtors and due to the fact that their Chapter 13 Plans require Metro Regional Transit Authority to make wage deductions from Debtors' wages and remit same to the trustee, Jerome Holub.