**In re Blaine J. REES, dba Rees's Enterprise, dba Rees Construction, dba Rees's Metal Works, dba Mountain View Development, (in Wyoming) and dba Western Manufactured Housing (in Wyoming), Debtor.**

**Blaine J. REES, dba Rees's Enterprise, Plaintiff,**

**v.**

**EMPLOYMENT SECURITY COMMISSION OF the STATE OF WYOMING, Defendant.**

**Bankruptcy No. 83C–00587. Civ. No. 85PC–0016.**

United States Bankruptcy Court, D. Utah.

May 2, 1986.

R. Mont McDowell, Salt Lake City, Utah, for debtor.

Joe Scott, Sp. Asst. Atty. Gen., Casper, Wyo., Winston Faux, Sp. Asst. Atty. Gen., Salt Lake City, Utah, for Employment Sec. Com'n of State of Wyo.

MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### FACTS AND PROCEDURAL BACKGROUND

This matter came before the Court on April 15, 1986, on the parties' cross motions for summary judgment. At issue in this adversary proceeding is the possible conflict between the Wyoming employment security taxation scheme and Section 525(a) of the Bankruptcy Code. The facts are undisputed and have been stipulated by the parties. Slightly simplified, they are as follows:

Blaine J. Rees, the debtor and plaintiff in this adversary proceeding, filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code on March 3, 1983. The debtor carried on his business as a debtor in possession, and no trustee or examiner was ever appointed. The debtor's plan of reorganization was confirmed

by order of the Court dated January 25, 1984.

The Employment Security Commission of the State of Wyoming ("ESC"), the defendant herein, is an agency of the State of Wyoming which collects employment security contributions or taxes from employers such as the debtor pursuant to the Wyoming Employment Security Law, W.S. §§ 27–3–101 *et seq.* ESC is a "governmental unit" as defined in 11 U.S.C. § 101(24).[1] On April 22, 1983, ESC filed a proof of priority claim for taxes under 11 U.S.C. § 507(a)(6) for the fourth quarter of 1982, in the amount of $3,174.23, and interest on same in the amount of $46.62, for a total amount of $3,220.85.

On or about January 1, 1984, ESC notified the debtor of his tax rate for 1984, which he would be required to pay on wages paid to persons employed by him in Wyoming, and of his right to appeal said rate notice within ESC. This rate notice advised the debtor that he had been assigned a rate of 7.78 percent. The computed rate, based on the debtor's experience period, which would otherwise have been assigned by ESC, was 6.16 percent for the first quarter of 1984, and 5.13 percent for the second, third, and fourth quarters of 1984. The reason ESC assigned Rees the higher tax rate was his failure to pay taxes due to ESC for the fourth quarter of 1982, and interest thereon, on or before September 30 of the preceding year, as required by W.S. § 27–3–503(b).[2]

The debtor, by a letter dated January 30, 1984, appealed the rate notice for 1984. In this appeal, the debtor did not contend that assignment of the higher rate violated Section 525 of the Bankruptcy Code. On March 2, 1984, ESC denied the appeal, advised the debtor of its decision and further advised him that he would be assigned a maximum rate for the following year, and years thereafter if taxes and interest were not paid by September 30. The debtor did not pursue further state remedies of appeal which existed under applicable Wyoming statutes.

By a letter dated September 12, 1984, ESC advised the debtor that he would be assessed the maximum rate of 9.75 percent for 1985, instead of a computed rate of 6.89 percent, the rate to which he would otherwise have been entitled except for the failure to pay taxes due to ESC for the fourth quarter of 1982, if the delinquency was not paid by September 30, 1984. On or about January 1, 1985, ESC notified the debtor of his tax rate for 1985, and of his right to appeal same. The debtor did not file an appeal of the 1985 rate with ESC.

ESC assigns the higher tax rate for the following year to all employers who fail to pay taxes and interest on or before September 30. The only criterion for doing so is the failure to pay on or before September 30.[3]

The debtor's Chapter 11 plan provides that ESC's prepetition claim of $3,220.85 has been allowed and will be paid within six years from the date of assessment, in equal quarterly installments beginning three months after the effective date. Said payments are in the amount of $219.91. The debtor has made each payment as it has become due under the plan.

---

1. *See* note 4, *infra.*

2. W.S. § 27–3–503(b) provides in pertinent part as follows:

   A contributing employer failing to pay all contributions, interest and penalties or to submit all quarterly contribution reports due on his account or any account assumed under W.S. 27–3–507 on or before September 30 preceding the effective date of his assigned rate shall be assigned a maximum rate of eight and one-half percent (8.5%) in addition to the adjustment factors for the next calendar year beginning January 1.

3. Under the Wyoming taxation scheme, the higher rate would be assigned whether the employer is in bankruptcy or not, or whether he is solvent or insolvent. Even if the employer paid the amount owing in full after September 30, for example on October 30, he would still be assigned the maximum rate for the following year. The only exception is for employers who are corporations or partnerships and are undergoing reorganization in bankruptcy. *See* note 21, *infra;* Stipulation of Facts ¶ 13 at 4.

Due to his being assigned the higher rate by ESC, the debtor has paid $2,487.28 over and above the amount he would have paid in 1984, and $1,783.94 more in the first quarter of 1985.

In their arguments and memoranda, the parties have considered and discussed the scope of Section 525 of the Bankruptcy Code. The debtor, for its part, urges the Court to read Section 525 expansively to cover this situation, pointing to the detrimental effect of the increased rate upon his ability to successfully reorganize. ESC, on the other hand, suggests that Section 525 should be given a restrictive and literal interpretation. It is to that Section that the Court now turns.

## I.

### The Language and Legislative History of § 525(a)

Section 525(a) protects a person who has been a debtor from certain forms of discriminatory treatment by a governmental unit.[4] It provides:

Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. §§ 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. § 204), a governmen-

tal unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[5]

It is instructive to look at the section's legislative history to determine its meaning. *See In re Begley*, 46 B.R. 707, 712 (Bkrtcy.E.D.Pa.1984). The statute was intended to codify the rule of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) which held that a state could not frustrate the Congressional policy of a fresh start for a bankrupt by refusing to renew a driver's license based on a discharged judgment resulting from an automobile accident. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 366–67 (1977), *re-*

---

**4.** The term "governmental unit" is defined in Section 101(24) as follows:

"[G]overnmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

**5.** As originally proposed by the Bankruptcy Commission, *see* text, *infra*, the section would have been extended to cover discrimination by private parties. In 1984, a new subsection (b) was added to protect the debtor from discrimination by private employers. Section 525(b) provides:

(b) No private employer may terminate the employment of, or discriminate with respect to

employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, Title III, § 309, 98 Stat. 354 (July 10, 1984).

*printed in* 1978 U.S.Code Cong. & Admin. News, pp. 5787, 6321, 6322; S.Rep. No. 95–989, 95th Cong., 2d Sess. 81 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, p. 5867. In that case, the Supreme Court struck down as violative of the Supremacy Clause an Arizona statute which provided for the suspension of an individual's driver's license if there existed an outstanding automobile collision judgment against the individual. The debtor, an uninsured motorist, had been involved in an accident and confessed judgment in a state court action for personal injury and property damage sustained in the collision. Subsequently, the debtor filed a voluntary petition for bankruptcy relief and obtained a discharge of his debts, including the judgment. The Superintendent of the Motor Vehicle Division of the State Highway Department suspended the debtor's driver's license pursuant to a provision of the Arizona Motor Vehicle Safety Responsibility Act, which required suspension of the driver's license of the owner of a car involved in an accident unless the owner deposited security in a sum sufficient to satisfy any judgment resulting from the accident. The statutory scheme invalidated by the court provided for continued suspension until the judgment was satisfied, and specifically stated that "[a] discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from any of the requirements of this article." 402 U.S. at 642, 91 S.Ct. at 1707.

Section 525 had no predecessor under the former Bankruptcy Act, but can be traced to the legislation proposed by the Commission on the Bankruptcy Laws of the United States. The Commission observed that the Act's "fresh start" policy had been frustrated by federal and state laws, such as the statute at issue in *Perez*, which subjected an individual who obtained a discharge, and failed to pay the discharged debt, to discriminatory treatment. It recommended that "no one be subjected to discriminatory treatment because he, or anyone with whom he is or has been associated, is or has been a debtor or has failed to pay a [discharged debt]." Report of the Commis-

sion on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93d Cong., 1st Sess., Pt. I at 177 (1973). Section 4–508 of the statute proposed by the Commission provided:

> *Protection Against Discriminatory Treatment.* A person shall not be subjected to discriminatory treatment because he, or any person with whom he is or has been associated, is or has been a debtor or has failed to pay a debt discharged in a case under the Act. This action does not preclude consideration, where relevant, of factors other than those specified in the preceding sentence, such as present and prospective financial condition or managerial ability.

*Id.,* Pt. 2, at 143–44.

The Commission bill and a competing bill drafted by the National Conference of Bankruptcy Judges were introduced in the 94th Congress in the House of Representatives as H.R. 31 and H.R. 32, and in the Senate as S. 235 and S. 236, respectively. Each contained identical versions of § 4–508. *See Hearings on H.R. 31 and H.R. 32 Before the House Subcomm. on Civil and Const. Rights,* Ser. No. 27, App., 94th Cong., 1st & 2d Sess. 160 (1976) (hereinafter "Hearings on H.R. 31 and H.R. 32"). Extensive hearings were conducted before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary and the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary in 1975 and 1976.

The credit industry was extremely concerned about the wording of § 4–508, and urged that it be redrafted to limit its application to *Perez*-type situations and prevent its application in the field of credit granting. *See Hearings on H.R. 31 and H.R. 32, supra,* Pt. 2 at 1026–27, 1029; *id.,* Pt. 3 at 1369; *Hearings on S. 235 and S. 236 Before the Senate Subcomm. on Improvements in Judicial Machinery,* Pt. 1, 94th Cong., 1st Sess. 129, 146, 173 (1975) (hereinafter "Hearings on S. 235 and S. 236"); *id.,* Pt. 2 at 433. The statutory language was very broad, and capable of being construed so as to prohibit a private loan com-

pany from considering a debtor's past bankruptcy in deciding whether to extend new credit. *Id. See also Hearings on H.R. 31 and H.R. 32, supra,* App. at 160 (Comments prepared by the Subcommittee on Civil and Constitutional Rights.)

Professor Frank Kennedy, executive director of the Bankruptcy Commission staff, testified that the purpose of § 4–508 was to implement the rule of the *Perez* case. "There are regulations and laws in California, most notably, where persons who have been discharged [in] bankruptcy may be denied an opportunity to engage in the employment for which they have trained themselves and had experience until they have paid their old debts notwithstanding a discharge in bankruptcy, and we were thinking of that kind of state law." *Hearings on S. 235 and S. 236, supra,* Pt. 1 at 37. The Department of Justice agreed that the language of Section 4–508, providing for the protection of discharged debtors from "discriminatory treatment," was too broadly worded. *Hearings on H.R. 31 and H.R. 32, supra,* Pt. 4 at 2097, 2120; *Hearings on S. 235 and S. 236, supra,* Pt. 2 at 479, 486. In response to these concerns, the section was redrafted to reflect more clearly the intention of its authors, namely, to cover discrimination by government, not to interfere with the handling of credit reports. *See id.* at 440.

Following the hearings in the 94th Congress, redrafted bankruptcy bills were introduced in the 95th Congress. *See generally* 1 COLLIER ON BANKRUPTCY ¶ 1.03[3], at 1–30 to 1–34 (15th ed. 1985). On July 11, 1977, H.R. 8200, was reported out by the House Judiciary Committee. *Id.* at 1.03[3][c], p. 1–34. As reported, § 4–508, rewritten and renumbered as § 525, provided:

### Protection against discriminatory treatment.

A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[6]

Between its introduction in October, 1977, and its consideration and report by the Senate Committee on the Judiciary on July 14, 1978, S. 2266 was extensively changed. 1 COLLIER ON BANKRUPTCY, *supra,* at 1.03[4][b] p. 1–43. Amendments were proposed to Section 525 during hearings before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary on December 1, 1977. Representatives of the United Fresh Fruit and Vegetable Association, a national trade organization, testified that the produce industry would be severely harmed unless an exception was created to Section 525 of S. 2266 for the Perishable Agriculture Commodities Act. *Hearings on S. 2266 and H.R. 8200, supra,* at 735–39. The National Cattlemen's Association also urged Congress to amend proposed Section 525 in order to preserve the effectiveness of the Packers and Stockyards Act and the Perishable Agricultural Commodities Act.

---

**6.** *Hearings on S. 2266 and H.R. 8200 Before the Senate Subcomm. on Improvements in Judicial Machinery,* 95th Cong., 1st Sess. 114–15 (1977) (hereinafter "Hearings on S. 2266 and H.R. 8200"). The version of § 525 contained in the Senate counterpart of H.R. 8200, as introduced at the 1st Session of the 95th Congress on October 31, 1977, was identical to the House version except that the additional word "job" was included between "permit" and "charter." *Id.*

To prevent this inequity, we would recommend the following amendment be made to the proposed Section 525.

Insert at the beginning of Section 525 [...] the following language: "Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–229), and section 1 of the Act entitled 'An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes: approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204).' "

*Id.* at 959.

The version of § 525 contained in S. 2266, as reported by the Senate Judiciary Committee on July 14, 1978, and passed by the full Senate on September 7, 1978, reflects these lobbying efforts during the December 1977 hearings. It provided:

### Protection against discriminatory treatment.

Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–229), and section 1 of an Act entitled "An act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1948 (57 Stat. 442; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, job, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The Senate version of Section 525 was enacted by the full Congress except that the word "job" was again deleted, for which the legislative history offers no explanation. *Cf.* note 6, *supra.*

The House Report on H.R. 8200 and the Senate Report on S. 2266 are nearly identical and indicate that while Section 525 was not intended to be as broad as proposed Section 4–508, it should not be construed too narrowly.

In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

\*   \*   \*   \*   \*   \*

The section is not so broad as a comparable section proposed by the Bankruptcy Commission, S236, 94th Cong, 1st Sess § 4–508 (1975), which would have extended the prohibition to any discrimination, even by private parties. Nevertheless, it is not limiting either, as noted. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, p. 6323; S.Rep. No. 95–989, 95th Cong., 2d Sess. 81 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, p. 5867. Congress deliberately left it to the courts to mark the contours of Section 525(a) in accordance with sound

bankruptcy policy. *Id. See Matter of Marine Electric Railway Products Division, Inc.,* 17 B.R. 845, 852, 8 B.C.D. 977, 6 C.B.C.2d 29 (Bkrtcy.E.D.N.Y.1982).

## II.

### Case Law

In the reported decisions to date, most courts have given Section 525(a) broad application. *See e.g., In re The A.C. Williams Company,* 51 B.R. 496, 500 (Bkrtcy. N.D.Ohio 1985) (collecting cases); *In re Goldrich,* 45 B.R. 514, 521 (Bkrtcy.E.D.N.

Y.1984) (collecting cases). However, few have gone as far as the debtor asks this Court to go in expanding the *Perez* doctrine.

The lower courts have applied Section 525(a) to prohibit numerous discriminatory acts by governmental units against debtors. *See generally Annot.,* "Protection of Debtor from Acts of Discrimination by Governmental Units Under § 525 of the Bankruptcy Code of 1978," 68 A.L.R.Fed. 137–56 (1984). Courts have applied Section 525(a) to matters involving driver's licenses,[7] college transcripts,[8] liquor licenses,[9]

**7.** *See, e.g., Matter of Holder,* 40 B.R. 847, 850, 11 B.C.D. 1347, Bankr.L.Rep. (CCH) ¶ 69,944 (Bkrtcy.E.D.Wis.1984) (statute which provides for revocation of operating privileges for drivers with unsatisfied judgments in connection with motor vehicle accidents does *not* discriminate against debtors *solely* because of filing bankruptcy petition); *In re Taylor,* 27 B.R. 83, 84 (Bkrtcy.S.D.Fla.1983) (suspension of debtor's driver's license because of an unsatisfied prepetition judgment debt for damages resulting from motor vehicle accident, which was discharged in bankruptcy, constituted discriminatory treatment); *In re Hinders,* 22 B.R. 810, 812–13, 9 B.C.D. 655 (Bkrtcy.S.D.Ohio 1982) (transit authority was entitled to relief from the automatic stay in order to proceed in state court for the sole purpose of obtaining a finding of the debtor's liability arising out of motor vehicle collision); *In re Shamblin,* 18 B.R. 800, 803 (Bkrtcy. S.D.Ohio 1982) (statute requiring persons who have had unsatisfied tort judgments discharged in Chapter 13 to maintain proof of financial responsibility was discriminatory and in violation of § 525); *Matter of Cerny,* 17 B.R. 221, 223–24, 8 B.C.D. 900, 5 C.B.C.2d 1545, (Bkrtcy. N.D.Ohio 1982) (debtor not entitled to restoration of driver's license without providing proof of financial responsibility as required by state law); *In re Young,* 10 B.R. 17, 18–19, 6 B.C.D. 12, 13, Bankr.L.Rep. (CCH) ¶ 67,723, C.B.C.2d 145 (Bkrtcy.S.D.Cal.1980) (denial of Chapter 13 debtor's application for renewal of driver's license during pendency of case violated § 525); *In re Duffey,* 13 B.R. 785, 787–88 (Bkrtcy.S.D. Ohio 1981) (suspension of debtors' driver's licenses because of unsatisfied judgments arising from automobile collisions violated § 525); *Matter of Layfield,* 12 B.R. 846, 849–50, 7 B.C.D. 1201 (Bkrtcy.N.D.Ala.1981) (suspension of Chapter 7 debtor's driver's license as a result of nonpayment of discharged judgments arising from automobile accident invalid under *Perez* doctrine and § 525); *In re Patterson,* 10 B.R. 860, 862, Bankr.L.Rep. (CCH) ¶ 67,989 (Bkrtcy. E.D.Pa.1981) (state's refusal to renew debtor's driver's license constituted discriminatory treatment under § 525); *In re Briner,* 10 B.R. 850,

852–53, 7 B.C.D. 656, 4 C.B.C.2d 539 (Bkrtcy.D. Colo.1981) (where suspension of Chapter 13 debtor's driver's license for failure to pay liability from motor vehicle accident would remove sole means of funding plan, state would be enjoined from suspending license); *Henry v. Heyison,* 4 B.R. 437, 442, 6 B.C.D. 243, Bankr.L. Rep. (CCH) ¶ 67,328, 1 C.B.C.2d 552 (Bkrtcy.E. D.Pa.1980) (state financial responsibility law establishing eligibility requirement not required of the general public for operating privileges, based solely on a debt which has been discharged, contravenes § 525).

Two distinct lines of cases have evolved with regard to the application of § 525 to state statutes which require persons against whom judgments have entered for operation of motor vehicles. One line, following *Perez,* holds that a state cannot revoke or refuse to renew a driver's license solely because of a judgment for damages which has been discharged in bankruptcy, nor can debtors be subject to greater proof of financial responsibility than nondebtors. The other holds the requirement not to be discriminatory and recognizes the state's interest in insuring that future accident victims be compensated. *Matter of Holder, supra,* 40 B.R. at 849, & notes 3 & 4 (collecting cases).

**8.** *See, e.g., Johnson v. Edinboro State College,* 728 F.2d 163, 165–66, 11 B.C.D. 163, Bankr.L. Rep. (CCH) ¶ 69,750, 10 C.B.C.2d 231 (3rd Cir. 1984) (state college permitted to withhold transcript from debtor whose educational loans were not dischargeable under Chapter 7); *In re Reese,* 38 B.R. 681, 682–83 (Bkrtcy.N.D.Ga.1984) (withholding transcripts from Chapter 13 debtor until discharge obtained violated § 525); *In re Johnson,* 28 B.R. 406, 407–08 (Bkrtcy.W.D.Pa. 1982), *rev'd Johnson v. Edinboro State College, supra* (state college could not deny debtor access to his diploma or transcript where purpose is to force collection of education loan that was not discharged in bankruptcy); *In re Howren,* 10 B.R. 303, 305, 7 B.C.D. 43, 4 C.B.C.2d 153 (Bkrtcy.D.Kan.1980) (state university's refusal to release transcript to Chapter 7 debtor violated

business licenses,[10] government contracts,[11] student loan applications,[12] public housing,[13] insurance,[14] public mortgage financing,[15] utility service,[16] building permits,[17]

§ 525); *In re Ware,* 9 B.R. 24, 25, 7 B.C.D. 373 (Bkrtcy.W.D.Mo.1981) (§ 525 did not apply to denial of transcript by private college as a method to force debt collection); *Matter of Heath,* 3 B.R. 351, 353, 6 B.C.D. 169, Bankr.L.Rep. (CCH) ¶ 67,390, 1 C.B.C.2d 736 (Bkrtcy.N.D.Ill.1980) (university's action in withholding Chapter 13 debtor's transcript discriminated against the debtor in violation of § 525); *Lee v. Board of Education,* 1 B.R. 781, 789, 29 Fed.R.Serv.2d 608 (S.D.N.Y.1979) (college's policy of denying transcripts to students who obtain bankruptcy discharge of education loans frustrates effect of fresh start and violates Supremacy Clause).

9. *See, e.g., Matter of Anderson,* 15 B.R. 399, 400, 5 C.B.C.2d 701 (Bkrtcy.S.D.Miss.1981) (State Tax Commission violated § 525 by refusing to renew debtor's liquor permit because of prepetition indebtedness and pendency of Chapter 11 case); *In re Jacobsmeyer,* 13 B.R. 298, 301–02, 7 B.C.D. 1277, 5 C.B.C.2d 38 (Bkrtcy.W.D.Mo. 1981) (State Department of Liquor Control, enjoined from requiring Chapter 13 debtors to pay prepetition debts in order to obtain goods from wholesalers); *In re Maley,* 9 B.R. 832, 834, 7 B.C.D. 471, 4 C.B.C.2d 292 (Bkrtcy.W.D.N.Y. 1981) (state liquor authority required under § 525 to issue liquor license to Chapter 11 debtor for operation of delicatessen).

10. *See, e.g., In re Geffken,* 43 B.R. 697, 701–02, 12 B.C.D. 406, Bankr.L.Rep. (CCH) ¶ 70,089, 11 C.B.C.2d 1223 (Bkrtcy.N.D.Ohio 1984) (Industrial Commission violated § 525 when it commenced action to enjoin Chapter 13 debtor from further operation of his business solely because of failure to pay prepetition workers compensation premiums); *In re Fasse,* 40 B.R. 198, 200–01 (Bkrtcy.D.Colo.1984) (if the only reason for suspension or revocation of real estate salesman's license is a debt discharged in Chapter 13 case, such action would be in direct contravention of § 525) (dicta); *Matter of Son-Shine Grading, Inc.,* 27 B.R. 693, 695–96, 10 B.C.D. 349, Bankr. L.Rep. (CCH) ¶ 69,095 (Bkrtcy.E.D.N.C.1983) (disqualification of debtor from bidding on contracts awarded by State Department of Transportation solely because of filing Chapter 11 petition was in violation of § 525); *Matter of Lambillotte,* 25 B.R. 392, 393–94, 9 B.C.D. 1385, 8 C.B.C.2d 430 (Bkrtcy.M.D.Fla.1982) (county unlawfully discriminated against Chapter 7 debtor by denying renewal of residential building contractor's license because he failed to repay or reaffirm discharged debts.)

11. *See, e.g., Matter of Marine Electric Railway Products Division, Inc.,* 17 B.R. 845, 852–53, 8 B.C.D. 977, 6 C.B.C.2d 29 (Bkrtcy.E.D.N.Y.1982) (city transit authority's rejection of debtor's bid on public purchase contract solely on basis of its status as a Chapter 11 debtor stated a claim

for discrimination under § 525); *In re Coleman American Moving Services, Inc.,* 8 B.R. 379, 7 B.C.D. 142, 3 C.B.C.2d 609 (Bkrtcy.D.Kan.1980) (Air Force contracting officer discriminated against Chapter 11 debtor by denying moving and storage contract because it was a debtor.)

12. *See, e.g., In re Goldrich,* 45 B.R. 514, 521–22, 12 B.C.D. 729, Bankr.L.Rep. (CCH) ¶ 70,235, 12 C.B.C.2d 8 (Bkrtcy.E.D.N.Y.1984) (statute which rendered persons who default on repayment of guaranteed student loans ineligible for future loans violated § 525 when applied to debtor whose earlier loan was discharged in bankruptcy); *In re Richardson,* 15 B.R. 925, 928–29, Bankr.L.Rep. (CCH) ¶ 68,619 (Bkrtcy.E.D.Pa. 1981), *vacated in part* 27 B.R. 560, 10 B.C.D. 570, 8 C.B.C.2d 79 (E.D.Pa.1982) (denial of guaranteed student loan application for failure to repay previously discharged student loans constituted discriminatory treatment).

13. *See, e.g., Matter of Gibbs,* 9 B.R. 758, 763–64, 7 B.C.D. 445 (Bkrtcy.D.Conn.1981) (city housing authority violated § 525 by seeking to evict debtor for nonpayment of discharged debt).

14. *See, e.g., In re A.C. Williams Co.,* 51 B.R. 496, 500–01, 13 B.C.D. 523 (Bkrtcy.N.D.Ohio 1985) (Ohio Bureau of Workers Compensation was not prohibited by § 525 from taking into account prepetition workers' claims experience in determining premium rate); *In re Rath Packing Co.,* 35 B.R. 615, 618–20, 11 B.C.D. 595, 9 C.B.C.2d 1295 (Bkrtcy.N.D.Iowa 1983) (revocation by State Insurance Commissioner of debtor's self-insurance exemption solely because of its having filed Chapter 11 violated § 525); *In re Hillcrest Foods, Inc.,* 10 B.R. 579, 580, 7 B.C.D. 735, Bankr.L.Rep. (CCH) ¶ 67,999 (Bkrtcy.D.Me. 1981) (summary suspension of debtor's status as self-insurer under Workers' Compensation statute solely due to Chapter 11 filing violated § 525).

15. *See, e.g., In re Helms,* 46 B.R. 150, 154 (Bkrtcy.E.D.Mo.1985) (record in the case failed to show that Veterans Administration denied former Chapter 7 debtor's home loan application solely because of bankruptcy); *Matter of Rose,* 23 B.R. 662, 667, 9 B.C.D. 885, 7 C.B.C.2d 909, 68 A.L.R.Fed. 128 (Bkrtcy.D.Conn.1982) (§ 525 encompasses discriminatory treatment in the field of mortgage financing by state housing agency).

16. *See, e.g., In re Begley,* 46 B.R. 707, 715–16, 12 B.C.D. 1345 (E.D.Pa.1984) (Public Utility Commission's refusal to exercise its jurisdiction to enforce electric utility's obligation to negotiate reasonable payment agreements before termi-

employment termination,[18] and agricultural subsidies.[19]

Generally, bankruptcy courts have interpreted Section 525(a) expansively, without careful consideration of its legislative history. Fairly typical of this approach is the statement of one court that Section 525(a) was designed to protect the debtor from all forms of discrimination which would interfere with his ability to gain a fresh start or to successfully reorganize. *In re Coleman American Moving Services, Inc.,* 8 B.R. 379, 7 B.C.D. 142, 3 C.B.C.2d 609 (Bkrtcy. D.Kan.1980). Some courts even concluded, prior to the 1984 amendment of Section 525, that the statute might even prohibit *private* discrimination.[20] One bankruptcy court has suggested that a determination of unlawful discrimination under a state statute could encompass two levels of inquiry. First, the state law should be examined to determine whether it is in conflict with Section 525. Second, following *Perez,* there may be an inquiry as to whether or not the law is contrary to the "fresh start" principle which underlies the Bankruptcy Code. *Matter of Holder,* 40 B.R. 847, 850, 11 B.C.D. 1347, Bankr.L.Rep. (CCH) ¶ 69,-944 (Bkrtcy.E.D.Wis.1984). This "policy-oriented" approach to Section 525(a) seeks to determine if the legislation would frustrate the rehabilitative policy of the Bankruptcy Code. *See In re Rath Packing Co.,* 35 B.R. 615, 620 & n. 11, 11 B.C.D. 595, 9 C.B.C.2d 1295 (Bkrtcy.N.D.Iowa 1983).

Appellate courts have tended to interpret Section 525(a) more narrowly. For example, the Second Circuit, in *Johnson v. Edinboro State College, supra,* 728 F.2d at 163, held that a state college was not prohibited under Section 525 from withholding the transcripts of a Chapter 7 debtor whose educational loans were not discharged. In that case, the bankruptcy judge ordered the college to issue a transcript to the debtor, asserting that denial of a transcript violated the "fresh start" policy of the Code. The ruling was affirmed by the district court. The Court of Appeals pointed out that "[t]he desire to give the debtor a 'fresh start' is a key goal of the Bankruptcy Code, but it is only one of several policies that underlie this complex statute, policies that often come into conflict with one another." *Id.* at 164. In reversing the lower courts, the Second Circuit distinguished cases under Chapter 13 on the basis of the availability of the broader discharge under that chapter.

The distinction between [*Matter of Heath,* 3 B.R. 351 (Bkrtcy.N.D.Ill.1980), and *In re Ware,* 9 B.R. 24 (Bkrtcy.W.D. Mo.1981)] and the case presented by Johnson is patent: the debts owed by *Heath* and *Ware* were dischargeable and, in fact, had been discharged; the debt Johnson owed Edinboro College is not dischargeable. Consequently, we can find no basis in the Bankruptcy Code to nullify Edinboro State's policy of withholding transcripts from those students who have made no payments on their educational loans, have not approached the college to arrange a more flexible

nating service to Chapter 7 debtors for post-petition arrearages does not violate § 525); *In re Webb,* 38 B.R. 541, 545, Bankr.L.Rep. (CCH) ¶ 69,805 (Bkrtcy.E.D.Pa.1984) (refusal to restore gas service to debtor's home based on gas tampering and gas theft, and not solely on basis of prepetition debt, did not violate § 525).

17. *See, e.g., In re Island Club Marina, Ltd.,* 38 B.R. 847, 854 (Bkrtcy.N.D.Ill.1984) (county prohibited under § 525 from refusing debtor building permits based solely upon the fact that debtor filed Chapter 11 petition).

18. *See, e.g., In re Latchaw,* 24 B.R. 457, 461–62, 9 B.C.D. 1028 (Bkrtcy.N.D.Ohio 1982) (transit authority was a governmental unit which would

be enjoined under § 525 from discharging or discriminating in the employment of Chapter 13 debtors).

19. *See, e.g., Matter of Haffner,* 25 B.R. 882, 887–88, 9 B.C.D. 1293, 7 C.B.C.2d 1116 (Bkrtcy.N.D. Ind.1982) (refusal of Department of Agriculture to enter into grain subsidy transaction with Chapter 11 debtors unless allowed to setoff prepetition unsecured debt constitutes unlawful discrimination).

20. *See, e.g., In re Olson,* 38 B.R. 515, 519, 11 B.C.D. 842, Bankr.L.Rep. (CCH) ¶ 69,781, 10 C.B.C.2d 864 (Bkrtcy.N.D.Iowa 1984) (dicta); *In re Long,* 3 B.R. 656, 6 B.C.D. 351, 2 C.B.C.2d 23 (Bkrtcy.E.D.Va.1980) (dicta).

repayment schedule, and have not had their debts discharged.

*Id.* at 166.

Similarly, in *Duffey v. Dollison*, 734 F.2d 265, Bankr.L.Rep. (CCH) ¶ 69,848, 10 C.B. C.2d 1394 (6th Cir.1984), the Sixth Circuit held that the Ohio Financial Responsibility Act, which provides that "any person" who fails to satisfy an accident-related judgment within 30 days will have his driver's license suspended until such person provides proof of financial responsibility does not violate Section 525 of the bankruptcy Code because the Ohio law applies equally to debtors and nondebtors.

The Ohio Financial Responsibility Act in no way discriminates against bankrupts, or penalizes them for filing in bankruptcy. The Act provides that "any person" who fails to satisfy an accident-related judgment within 30 days shall have his or her driving privileges suspended by the Registrar. Ohio Rev.Code Ann. §§ 4509.35, .37 (Baldwin 1975). The statute applies without exception to *any* person who fails to satisfy a judgment for whatever reason, whether because of unwillingness, inadvertence, or inability to pay. Once a judgment has been certified to the Registrar for non-payment, the debtor's obligation to furnish proof of financial responsibility becomes fixed. Thereafter, neither payment of the debt, reaffirmation, nor bankruptcy can relieve the debtor of this requirement. Judgment debtors such as the Duffeys who seek relief under the bankruptcy laws are therefore treated no differently from any other judgment debtor. Indeed it is this lack of discrimination to which the Duffeys take exception. By arguing that bankrupts who have proved to be irresponsible drivers should be excused from the requirement of posting proof of financial responsibility, the Duffeys in effect ask this court "to go beyond the fresh start policy of *Perez* and ... give a debtor a head start over persons who are able to satisfy their unpaid judgment debts without resort to a discharge in bankruptcy." *In re Cerny*, 17 B.R. 221, 224 (Bkrtcy.N.D.

Ohio 1982). We do not believe that section 525 was intended by Congress to afford debtors in bankruptcy such preferential treatment.

*Id.* at 273.

Most recently, in *In re Goldrich*, 771 F.2d 28 (2nd Cir.1985), the Second Circuit held that a New York statute which renders any student who is in default in the repayment of a student loan ineligible for subsequent student loans does not conflict with Section 525. The debtor had obtained a discharge of a student loan in 1981 and was seeking additional loans. When New York State Higher Education Services refused to guarantee the later loans in reliance upon the state law, the debtor reopened his bankruptcy case and commenced an adversary proceeding seeking injunctive relief for violation of Section 525. The bankruptcy court held that the state statute unlawfully discriminated against former debtors. The district court affirmed, and ordered the defendant to process the debtor's loan application. The Court of Appeals held that the antidiscrimination safeguards of Section 525 do not extend to postdischarge applications for credit.

Significantly, section 525 does not promise protection against consideration of the prior bankruptcy in post-discharge credit arrangements. We believe that this omission was intentional. A credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants. Had Congress intended to extend this section to cover loans or other forms of credit, it could have included some term that would have supported such an extension. We are reluctant to probe beyond the plain language of the statute. Although the exact scope of the items enumerated may be undefined, the fact that the list is composed solely of benefits conferred by the state that are unrelated to credit is unambiguous. Congress' failure to manifest any intention to include items of a distinctly different character is also un-

ambiguous. In the absence of ambiguity, no further inquiry is required. *Id.* at 30.

## DECISION

This court is sympathetic to the debtor's efforts to spare himself the additional expense imposed under the Wyoming statute in order to further his reorganization. However, to find for the debtor under these circumstances would require reading far more into Section 525(a) than Congress intended. Section 525(a) provides that a governmental unit may not deny, revoke, or refuse to renew a license, permit, or other similar grant to, or discriminate with respect to such a grant against a debtor solely because he sought relief under the bankruptcy laws. The subsection prohibits a governmental unit from denying employment to a debtor, terminating his employment, or discriminating with respect to his employment. It further prohibits discrimination against a debtor solely because he was insolvent prior to commencing a bankruptcy case or during the bankruptcy case, or because the debtor has not paid a dischargeable debt.

ESC does not issue any licenses, permits, charters, franchises, or any similar grant. Since it does not have the power to grant or deny such benefits, and such conduct is not complained of by the debtor, it is difficult to find how ESC's conduct falls within the purview of Section 525(a). Nor does the debtor contend that ESC has fired him, refused to hire him, or otherwise discriminated against him with respect to employment. ESC has given him a higher tax

rate. This Court therefore holds that employment security taxes contributed by employers pursuant to W.S. § 27–3–503(b) do not fall within the scope of Section 525(a). As an alternative basis for its ruling today, this Court holds that imposition of the higher tax rate is not discriminatory treatment against the debtor resulting solely from his recourse to the bankruptcy laws.

In giving meaning to the concept of nondiscriminatory application, which lies at the heart of § 525(a), the Court must examine the operation and effect of the Wyoming statute. *See In re William Tell II, Inc.,* 38 B.R. 327, 330, 11 C.B.C.2d 235 (Bkrtcy.N.D. Ill.1983). It is apparent from the face of the statute that W.S. § 27–3–503(b) applies to debtors and nondebtors alike. The criterion for assigning the higher tax rate is failure to pay the amount due by the September 30 deadline. It does not matter whether the employer is or has been a debtor or a bankrupt, whether it has been associated with one, whether it is or has been insolvent, or has not paid a dischargeable debt.[21] This Court therefore concludes that W.S. § 27–3–503(b) is being applied nondiscriminatorily and is consistent with Section 525(a).

## CONCLUSION

Congress considered many alternatives to preserve the effectiveness of a debtor's fresh start. During the legislative process, the broadly worded protection against "discriminatory treatment" originally found in Section 4–508 of the Commission bill gave way to the much narrower enumeration found in Section 525(a). Neither the lan-

---

**21.** It is undisputed that the debt owing to ESC is nondischargeable. Section 1141(a) provides that "[e]xcept as provided in [§ 1141(d)(2) and (3) ], the provisions of a confirmed plan bind the debtor ... and any creditor...." Subsection (d)(2) provides that "[t]he confirmation of a plan does not discharge an individual debtor from a debt excepted from discharge under Section 523 ...." Defendant's claim for employment security contributions is a debt under Section 507(a)(6), which is excepted from discharge under Section 523(a)(1). Although the debtor points out, and ESC admits, that ESC does not assign a higher tax rate to corporations operating under confirmed Chapter 11 plans, that fact

alone does not evidence either discriminatory treatment of this individual debtor or discrimination based solely on the basis of bankruptcy, on the basis of insolvency before or during bankruptcy, or on the basis of nonpayment of a discharged debt. Under § 1141(d)(1), a corporate debtor, unlike an individual debtor, obtains a discharge of its prepetition taxes. 11 U.S.C. §§ 1141(d)(2), 1129(a)(9)(C). *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 129–30 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5915–16; 124 Cong.Rec. S 17,422, (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H 11,105 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

guage nor the legislative history of that subsection support a finding of unlawful discrimination on the facts of this case.

The Court concludes from the foregoing that there are no genuine issues of material fact and the defendant is entitled to judgment dismissing plaintiff's complaint as a matter of law. Counsel for defendant shall prepare and submit an appropriate form of judgment in accordance with Local Rule 13.