**In re Dorothy WATTS, Robert Bratton, and John and Irene Pizzileo.**

**Civ. A. No. 87–4814.**

United States District Court, E.D. Pennsylvania.

Nov. 30, 1988.

---

Jo Lynn Stoy, Francis Haas, Jr., Harrisburg, Pa., W. Jeffrey Garson, David Searles, Philadelphia, Pa., Edward M. Mazze, Furlong, Pa., Horace Stern, Christopher G. Kuhn, Philadelphia, Pa., for plaintiffs.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This matter is before the court on appeal from the bankruptcy court pursuant to 28 U.S.C. § 1334(a). The appellants are the Pennsylvania Housing Finance Agency, a governmental instrumentality of the Commonwealth of Pennsylvania, and Robert F. Bobincheck, an official of said agency (hereinafter collectively referred to as "PHFA" or "appellants"). The appellees, Dorothy Watts, Robert Bratton and John and Irene Pizzileo (hereinafter "debtors" or

"appellees"), are the bankruptcy debtors in three separate Chapter 7 bankruptcy proceedings. The debtors brought suit below in their individual capacities and as representatives of a class of unnamed persons who had their benefits under the Pennsylvania Homeowners Emergency Mortgage Assistance Program, 35 Pa.Stat.Ann. § 1680.401c, *et seq.* (hereinafter "HEMAP"), terminated a short time after they had filed for bankruptcy under federal laws.

The debtors instituted an action against the appellants in the bankruptcy court claiming that PHFA wrongfully terminated benefits being received by the debtors under HEMAP. In the course of this proceeding, cross-motions for summary judgment were filed on behalf of both sets of litigants. The bankruptcy court eventually granted appellees' request for summary judgment while denying the appellants' motion. The court below based its decision upon its finding that the appellants' unilateral termination of HEMAP benefits discriminated against the debtors in violation of 11 U.S.C. § 525(a), which prohibits governmental units from denying licenses, permits, charters, franchises, or other similar grants to persons who are or become debtors under federal bankruptcy laws. The bankruptcy court also held that the appellants violated the automatic stay provision of 11 U.S.C. § 362(a)(3) by exercising control over property of the bankruptcy estate without being authorized to do so. In addition, the court further held that the appellants, through state action and in violation of federal laws, deprived the debtors of their civil rights in violation of 42 U.S.C. § 1983.[1] 76 B.R. 390.

PHFA now appeals from this decision of the bankruptcy court. For the following reasons, the decision of the bankruptcy court will be affirmed.

## I. BACKGROUND

In 1983, the Pennsylvania General Assembly found that, as a result of a severe recession, the capacity of many home-

owners to continue to make their mortgage payments had deteriorated, and concluded that many could retain their homes if they received temporary financial assistance. In response to these conditions, the General Assembly enacted HEMAP, and delegated its administration to the PHFA. The law was intended to prevent widespread mortgage foreclosure and distress sales of homes by providing emergency mortgage assistance payments to homeowners who defaulted on their mortgages due to circumstances beyond their control. *See,* Statement of Purpose, Preamble to Act 91 of 1983, 35 Pa.Stat.Ann. § 1680.401c (Supp. 1988) (note). From time to time, the General Assembly has appropriated limited funds to PHFA for the implementation of HEMAP.

Under HEMAP, PHFA makes subsidized loans to eligible homeowners facing mortgage foreclosure by advancing funds directly to the homeowner's mortgagees. The loan is secured by a mortgage taken against the real estate and is repaid with interest as the homeowner's financial condition improves. 35 Pa.Stat.Ann. § 1680.405c(a), (c), (f), (g) (Supp.1988). If the assistance is granted, the homeowner is loaned money to bring his mortgage current. In addition, if the homeowner's financial condition falls below a statutorily set threshold, PHFA will lend money on a monthly basis to assist the homeowner with his or her monthly payments. 35 Pa. Stat.Ann. § 1680.405c(b) (Supp.1988). In the event the homeowner receives this special assistance, the statute requires the homeowner to assume full monthly mortgage payments without agency help within three years. *Id.*

Certain eligibility requirements for loans under HEMAP must be met before any funds are distributed. In general, to be eligible for assistance, the property owned by the applicant must be a one or two family owner-occupied Pennsylvania residency, subject to a loan secured by a mortgage, which is the principal residence of the mortgagor. Moreover, the mortgage

---

1. The bankruptcy judge also denied appellants' motion requesting the judge to recuse himself

from the case. PHFA has expressly withdrawn this issue on appeal.

lender must have notified the homeowner of its intention to foreclose or have initiated other legal action to take possession of the secured real estate. 35 Pa.Stat.Ann. § 1680.404c (Supp.1988).

Each of the named debtors' cases present similar factual situations. The named debtors were Pennsylvania homeowners who fell behind in payments on their residential mortgages. After falling behind on these payments, each homeowner applied to PHFA for HEMAP benefits. In each case, HEMAP benefits were granted. Appellees Watts and Bratton had their mortgage arrears paid and were receiving ongoing monthly assistance from HEMAP. Appellee Pizzileo's petition for HEMAP benefits was approved but the monies have not been disbursed.

At some point after having been approved for HEMAP benefits, each homeowner filed a bankruptcy petition. After notification of the petition, PHFA, without seeking relief from the automatic stay imposed by 11 U.S.C. § 362(a)(3), admittedly sent each of the named debtors and unnamed class members a form letter stating that "the [PHFA] is discontinuing your monthly assistance under [HEMAP] due to your filing for bankruptcy." The letter, under the signature of appellant Bobincheck, went on to state two reasons for the action: (1) a homeowner is ineligible for HEMAP benefits when the mortgagee "is prevented by law from foreclosing upon the mortgage," pursuant to 35 Pa.Stat. Ann. § 1680.404c(a)(7), and the imposition of the automatic stay prohibits such foreclosure; and (2) the bankruptcy filing is a "change in your financial circumstances" provided for at 35 Pa.Stat.Ann. § 1680.405c(d) necessitating a reevaluation of the debtor's eligibility. In addition to the named debtors, PHFA admitted, in discovery, that thirteen other debtors had received this letter and, like the appellees,

had their benefits terminated until their bankruptcy actions were resolved.

PHFA now contends that the bankruptcy court erred in holding that the suspension of HEMAP loan payments violated §§ 525(a) and 362(a)(3) of the Bankruptcy Code. Each of these contentions will be addressed separately below.[2]

## II. DISCUSSION

### A. *The Suspension of HEMAP Benefits by the PHFA Violated the Antidiscrimination Provisions of 11 U.S.C. § 525(a)*

PHFA contends that the bankruptcy court erred in interpreting the language of 11 U.S.C. § 525(a) to include the extension of credit or the making of loans within the scope of the statute's enumerated protections. Section 525 reads in pertinent part:

A governmental unit[3] may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The legislative history of § 525 indicates that Congress added this section to the Bankruptcy Code specifically to codify the United States Supreme Court's holding in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), S.Rep. No. 989, 95th Cong., 2nd Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5867.

---

**2.** If the court finds error on the part of the bankruptcy court in holding that PHFA's suspension of HEMAP loan payments violated §§ 525(a) and 362(a)(3), then appellees' § 1983 claim must fail as well, since it is based solely upon the claimed violation of these provisions of the Bankruptcy Code.

**3.** PHFA admits that it is a "government unit" for purposes of § 525. *See* Appellants' Brief at p. 13.

In *Perez*, the petitioners filed a bankruptcy petition two days before judgment was entered against them for personal injuries and property damages arising from an automobile accident. The judgment was eventually discharged in bankruptcy by order of the district court. Pursuant to an Arizona state statute which provided for the suspension of a person's driving privileges when an accident-related judgment remained unsatisfied for sixty days, the petitioners' driving privileges were suspended. In order to have such privileges reinstated, the petitioners were required, pursuant to the statute, to satisfy the judgment against them and give proof of future financial responsibility.

The Supreme Court concluded that the Arizona statute was "at odds" with the purposes underlying federal bankruptcy law, and declared it unconstitutional under the Supremacy Clause of the United States Constitution. In so holding, the Court concluded that the statute had the effect of frustrating one of the primary purposes of the Bankruptcy Act which was "to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" 402 U.S. at 649, 91 S.Ct. at 1711, *quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

Most courts have broadly applied the antidiscrimination provision of § 525. *See In re Rose,* 23 B.R. 662, 666–67 (Bankr.D. Conn.1982); *In re Gibbs,* 9 B.R. 758, 764 (Bankr.D.Conn.1982); *In re The Rath Packing Company,* 35 B.R. 615, 618 (Bankr.N.D.Iowa 1983). As a result, this section has been invoked successfully in areas as diverse as liquor licenses, drivers' licenses, government contracts, school transcripts, public housing, mortgage financing, utility services, insurance, and agricultural subsidies. *Id.*

Other courts, however, have been unwilling to extend the statute's protections so broadly. *In re Goldrich,* 771 F.2d 28, 30 (2d Cir.1985); *In re Rees,* 61 B.R. 114, 123–24 (Bankr.D.Utah 1986). *See also Johnson v. Edinboro State College,* 728 F.2d 163 (3d Cir.1984) (a college transcript may be withheld to collect a student loan which was not discharged by the debtor's bankruptcy).

Those courts which have broadly construed the protections afforded by § 525, as the bankruptcy court did here, relied primarily upon the congressional reports accompanying § 525 which contained language indicating that Congress sought to attack a broader range of discriminatory practices than those specifically enumerated in the statute:

> The section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the *Perez* Rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a state bar association or a medical society, or by other organizations that can seriously affect the debtors [sic] livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.
>
> The effect of the section, and of further interpretations of the *Perez* Rule is to strengthen the anti-reaffirmation policy found in Section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations contrary to the expressed policy [of the Act].... The courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6323; S.Rep. No. 989, 95th Cong., 2nd Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5867.

In the present action, PHFA claims that the bankruptcy court erred in holding that an extension of credit or the making of loans should be considered a discriminatory practice under the broad phrase "other similar grant" found in § 525. The appellant argues that under traditional rules of statutory construction, specifically the doctrine

of *ejusdem generis,* such an interpretation is improper.

*Ejusdem generis* is a common sense doctrine which teaches: "Where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980). Ordinarily, the doctrine is a valuable tool of construction; however, as the United States Court of Appeals for the Third Circuit has warned, it is not a rule of law and should not be applied where it would defeat the obvious purpose of the statute. *United States v. Frumento,* 563 F.2d 1083, 1090 (3d Cir.1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978). *See also Texas v. United States,* 292 U.S. 522, 534, 54 S.Ct. 819, 825, 78 L.Ed. 1402 (1934) ("The rule of 'ejusdem generis' is applied as an aid in ascertaining the intention of the Legislature, not to subvert it when ascertained."). Application of this rule to the discrimination provision of § 525 would clearly lead to such a result in the present case.

The legislative history of § 525 indicates that Congress sought to attack, in a broad manner, discriminatory practices by governmental entities that would prevent a debtor from taking advantage of the opportunities afforded by federal bankruptcy laws for acquiring a financial "fresh start." Application of the rule of *ejusdem generis,* as the appellants now suggest, would clearly defeat this purpose because a narrow reading of the protections afforded to debtors under § 525 would force debtors, like the appellees, to forego filing for bankruptcy so as to not jeopardize their eligibility for HEMAP loans. In the present action, the appellees decided to utilize the framework set up by Congress providing debtors with the opportunity to start anew. PHFA admits that HEMAP benefits were terminated in this case solely because the debt-

ors exercised their right to file for bankruptcy under federal law. A narrow interpretation of the protections afforded by § 525 would authorize such discriminatory action which Congress, as indicated by the legislative history, clearly meant to prohibit.

The case at bar is very similar to the *Rose* case cited earlier. In *Rose,* a bankruptcy debtor claimed that he had been denied mortgage financing by a state agency because of his failure to pay a discharged student loan. The court held that § 525 prohibited such actions, concluding that:

> If a state has chosen to enact a program of home financing for its citizens, § 525 prohibits that state from exempting debtors or bankrupts from those benefits solely because of his bankruptcy and without taking into account present financial capability. To hold to the contrary would frustrate the Congressional policy of granting the debtor a fresh start by denying him a means open to other citizens of acquiring a home.

23 B.R. at 666–67.

In view of the fact that PHFA is a governmental unit, and in light of the developed law as to the types of activities encompassed by § 525, this court concludes that Congress intended to prevent discriminatory treatment in the field of mortgage financing where the state has chosen to make such benefits available to the general public. Thus, the bankruptcy court did not err in holding that the extension of credit or the making of loans by a state agency falls within the scope of § 525's enumerated protections.[4]

B. *The Suspension of HEMAP Benefits by PHFA Violated the Automatic Stay Provision of 11 U.S.C. § 362(a)(3)*

▮ Appellants also contend that the bankruptcy court erred in finding that the

---

4. The court also finds that the *Rees* and *Goldrich* cases cited earlier do not support appellants' contentions here because, in both cases, the denial of benefits was based on the debtors' post-discharge credit history, unlike this case

where HEMAP benefits were terminated solely because the debtors filed for bankruptcy a short time after they received approval for such benefits.

suspension of HEMAP benefits violated the automatic stay provision of 11 U.S.C. § 362(a)(3). This statute provides in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> (3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate.

The term "property of the estate" is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court has held that this term should be read broadly to further the congressional purpose of encouraging reorganizations. *U.S. v. Whitting Pools, Inc.*, 462 U.S. 198, 204–5, 103 S.Ct. 2309, 2313–4, 76 L.Ed.2d 515 (1983). *See also In re Mason*, 69 B.R. 876, 882–83 (Bankr.E.D.Pa. 1987).

PHFA claims that the bankruptcy court erred in holding that HEMAP benefits are governmental entitlements which constitute "property" of the bankruptcy estate under § 541(a)(1) of the Bankruptcy Code. The appellant contends that HEMAP benefits are loans which, unlike governmental grants, must be repaid by the recipient pursuant to their agreement with the agency, and, as a result of this obligation, such benefits cannot be considered "property" for purposes of § 541(a)(1).

The court cannot agree with the appellants' assessment of HEMAP benefits in this context. HEMAP benefits are not typical loans. While such benefits are structured as loans, what the homeowner really receives has the elements of both a grant and a loan. Though the recipient is required to repay such benefits, the obligation to do so may be deferred for many years, and the interest rate applicable to such disbursements will most likely be below the applicable market rate. 35 Pa.Stat. Ann. § 1680.406c (Supp.1988). In addition, not every homeowner in Pennsylvania is eligible to receive HEMAP benefits.

As previously mentioned, a homeowner must meet numerous eligibility requirements to even be entitled to receive such benefits. Once becoming eligible, the homeowner obtains an interest, a right, an entitlement to the mortgage assistance benefits provided under the act. As the appellees have rightly pointed out, this statutory entitlement is quite similar to the right to receive welfare benefits from a state which arises once an applicant meets all the necessary eligibility requirements. The Supreme Court has held that an entitlement to welfare benefits constitutes a property interest for purposes of the Due Process Clause of the Fourteenth Amendment. *Goldberg v. Kelly*, 397 U.S. 254, 262, n. 8, 90 S.Ct. 1011, 1017 n. 8, 25 L.Ed.2d 287 (1970). If an entitlement similar to welfare benefits would be considered "property" for Fourteenth Amendment purposes, it should qualify as "property" under § 541(a)(1) as well.

Moreover, the loans in the present action most closely resemble energy assistance payments since one of the primary purposes of HEMAP is to provide economic assistance for vital human needs. Such energy assistance programs have been regularly held to be "property" of a debtor's estate. *Morris v. Philadelphia Electric Co.*, 45 B.R. 350, 351–53 (Bankr.E.D.Pa. 1984); *In re Maya*, 8 B.R. 202, 207 (Bankr. E.D.Pa.1981).

In addition, it is also the court's view that including HEMAP benefits within the scope of the term "property" within § 541(a)(1) would further the congressional purpose of encouraging reorganizations under the Bankruptcy Code by removing a real threat which "hangs over a debtor's head" that applying for a personal reorganization under chapter 7 could result in the termination of vitally needed assistance payments from the state.

For the aforementioned reasons, the court concludes that the bankruptcy court did not err in holding that HEMAP benefits constitute "property" for purposes of § 541(a)(1). As such, when HEMAP benefits were withheld by PHFA, the automatic

stay provision of 11 U.S.C. § 362(a)(3) was violated.

C. *Appellees Claim Based Upon 42 U.S.C. § 1983*

Since the appellants have violated §§ 525(a) and 362(a)(3) of the Bankruptcy Code, the appellees have established a valid claim under 42 U.S.C. § 1983, and deserve to be compensated for the deprivation of a federally protected right. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).

The appellants have also raised two issues for the first time on appeal. First, PHFA claims that its termination of HE-MAP benefits to appellees was permissible under 11 U.S.C. § 365(e)(2)(B), because it was a termination or modification of an executory contract to make a loan or extend other debt financing or financial accommodations. Second, PHFA argues that it should not be compelled to continue disbursing HEMAP benefits to appellees because the appellees have failed to reaffirm their obligation to repay these benefits by assuming their "executory contracts." Because these claims were never raised in the court below, this court is precluded from passing on them now. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed. 2d 826 (1976); *Newark Morning Ledger Co. v. U.S.,* 539 F.2d 929, 932 (3d Cir.1976); *Universe Tankships, Inc. v. U.S.,* 528 F.2d 73, 75 (3d Cir.1975).

## III. CONCLUSION

For the foregoing reasons, the bankruptcy court's decision in this matter will be affirmed.

An appropriate Order will be entered.