**In re WATTS, Dorothy, Bratton, Robert, Pizzileo, John & Irene, Debtors,**

v.

**PENNSYLVANIA HOUSING FINANCE CO. and Robert F. Bobincheck, ind. and in his official capacity as Director of the Pennsylvania Housing Finance Agency, Appellants.**

No. 88–1968.

United States Court of Appeals, Third Circuit.

Argued April 18, 1989.

Decided June 5, 1989.

Ernest D. Preate, Jr., Atty. Gen., Mary Benefield Seiverling (argued), Deputy Atty. Gen., Calvin R. Koons, Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellants.

Henry J. Sommer, David A. Searles (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellees.

Before SEITZ, SLOVITER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Pennsylvania's Homeowner's Emergency Mortgage Assistance Program (HEMAP), 35 Pa.Cons.Stat.Ann. §§ 1680.401c *et seq.* (Purdon Supp.1988), provides loans to homeowners in financial difficulty to prevent imminent mortgage foreclosure. Loan payments are suspended during the pendency of bankruptcy proceedings, when foreclosure is prohibited under the Bankruptcy Code; they may resume, however, if the automatic stay under the Bankruptcy Code is lifted or when bankruptcy proceedings end if foreclosure once again is impending. The district court held that the suspension of the plaintiffs' loan payments pursuant to these provisions violated the anti-discrimination and automatic stay provisions of the Bankruptcy Code, 11 U.S.C. §§ 525 and 362(a)(3), as well as 42 U.S.C. § 1983. We disagree and therefore will reverse.

HEMAP was passed in 1983 to establish "a program which will, through emergency mortgage assistance payments, prevent widespread mortgage foreclosures and distress sales of homes which result from default caused by circumstances beyond a homeowner's control." 35 Pa.Cons.Stat. Ann. § 1680.401c (note) (Findings and Purpose). It authorizes the Pennsylvania Housing Finance Agency (PHFA) to pay directly to an eligible homeowner's mortgagee the full amount needed to make the mortgage current, as well as monthly payments to help keep it so. 35 Pa.Const.Stat. Ann. § 1680.405c(a), (b). A loan for the assistance is made to eligible homeowners, secured by a mortgage lien on their homes and repayable with interest. 35 Pa.Cons. Stat.Ann. §§ 1680.405c(g); 1680.406c.

A homeowner must satisfy various eligibility requirements to obtain a loan under HEMAP, including the requirement that the mortgagee "has indicated to the mortgagor its intention to foreclose." 35 Pa. Cons.Stat.Ann. § 1680.404c(a)(2)(i). Relatedly, and significantly for present purposes, a condition of eligibility is that "[t]he mortgagee is not prevented by law from foreclosing upon the mortgage." 35 Pa. Cons.Stat.Ann. § 1680.404c(a)(7). The pertinent regulations note that if a homeowner is in bankruptcy and the automatic stay is in effect, the lender is legally prevented from foreclosing, further elaborating that if a homeowner is in bankruptcy at the time of application, assistance is contingent upon, *inter alia,* the lifting of the stay. 16 Pa.Code § 40.202(e).

If all eligibility requirements are met and if "money is available in the Homeowner's Emergency Mortgage Assistance Fund," assistance will follow. 35 Pa.Cons.Stat. Ann. § 1680.404c(b); *see also* 35 Pa.Cons. Stat.Ann. § 1680.409c. PHFA must review a homeowner's financial circumstances at least annually, 16 Pa.Code § 40.204(c)(6), and "[p]ayments may stop if the Agency determines that, because of changes in the homeowner's financial circumstances, the payments are no longer necessary." 16 Pa.Code § 40.204(c)(2).

The named plaintiffs in this case, Dorothy Watts, Robert Bratton, and John and Irene Pizzileo, all applied for loans under HEMAP and were determined eligible for assistance. PHFA cured Watts' and Bratton's arrearages, and for a time provided them with monthly assistance. However, when Watts and Bratton filed Chapter 7 bankruptcy petitions, their monthly payments were suspended. The PHFA approved the Pizzileos' loan application but, after the Pizzileos filed bankruptcy proceedings under Chapter 7, the PHFA reevaluated their eligibility, and notified their mortgagee that payments would not be made.

PHFA notified Watts, Bratton, and other unnamed class members of the termination of monthly assistance in a form letter, which provided in part,

[p]lease be advised that the Agency is discontinuing your monthly assistance under the Homeowner's Emergency

Mortgage Assistance Program due to your filing for bankruptcy.

Pursuant to Act 91, a homeowner is ineligible for assistance when the mortgagee is prevented by law from foreclosing upon the mortgage. (35 P.S. Section 1680.404(a)(7)). As long as the automatic stay of the Bankruptcy Court remains in effect, the mortgagee is prohibited from instituting foreclosure proceedings against you. Accordingly, you presently fail to satisfy this eligibility requirement.[1]

The plaintiffs, in their individual capacities and on behalf of a class consisting of "all individuals who have been or will in the future apply for or be awarded benefits under HEMAP and thereafter become debtors under the Bankruptcy Code," filed suit against PHFA and Robert Bobincheck, its director (hereinafter collectively referred to as PHFA). Complaint, ¶ 10. They alleged that PHFA's suspension of monthly assistance following the filing of their bankruptcy petitions violated the anti-discrimination provision of the Bankruptcy Code, 11 U.S.C. § 525, the automatic stay provision, 11 U.S.C. § 362, and 42 U.S.C. § 1983. Complaint, ¶¶ 39–41.

After the complaint was filed, Watts received a discharge in bankruptcy. PHFA then apparently reinstated assistance and cured her mortgage default. Appx. 43; 93. Bratton also received a discharge, Appx. 9, and the record indicates that he was reevaluated "and will be reinstated" after providing documentation "that the automatic stay has been lifted for all mortgagees, all discharged mortgage obligations have been reaffirmed, and the Bankruptcy Court and the Trustee have approved of his receiving emergency mortgage assistance." Appx. 42. Although the record does not reveal whether the Pizzileos have received a discharge, it does indicate that they have been reevaluated and "determined eligible for mortgage assistance pending the submittal

of requested bankruptcy information" equivalent to that required of Bratton. Appx. 44.

Following discovery, the parties filed cross-motions for summary judgment. The bankruptcy court, by written opinion and order of June 30, 1987, granted the plaintiffs' motion, holding that the defendants' practices of suspending mortgage assistance upon the filing of a bankruptcy petition violated 11 U.S.C. §§ 525 and 362, and 42 U.S.C. § 1983. *In re Watts*, 76 B.R. 390 (Bkrtcy.E.D.Pa.1987). The court further granted the plaintiffs' motion to maintain this action as a class action under Fed.R. Civ.P. 23(b)(2), the class being all individuals who have applied for or been awarded benefits under HEMAP "or will do so in the future." While the bankruptcy court found that the defendants had violated 42 U.S.C. § 1983, it did not award the plaintiffs damages for the violation as they had not, at least yet, suffered any damages by reason of the violation. Thus, as the bankruptcy court noted, the relief was essentially injunctive and declaratory both as to the plaintiffs individually and the class. The defendants then appealed to the district court, which affirmed by opinion and order of November 30, 1988. 93 B.R. 350 (E.D. Pa.1988). The defendants then appealed to this court and we have jurisdiction under 28 U.S.C. § 158(d).

## A. *Antidiscrimination Provision*

 Section 525 of the Bankruptcy Code provides in pertinent part that "a governmental unit may not deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other *similar* grant to, condition such a grant to, [or] discriminate with respect to such a grant against," a bankruptcy debtor "solely because" of the bankruptcy filing. 11 U.S.C. § 525(a) (emphasis added). PHFA does not dispute that it is a "governmental unit." It does,

---

**1.** The form letter further provided,

[i]n addition, your filing for bankruptcy is a change in your financial circumstances which necessitates the re-evaluation of your eligibility for emergency mortgage assistance under the other eligibility [*sic*] requirements of Act

91. If you desire to have your application re-evaluated by the Agency to determine whether you would be eligible for assistance once the automatic stay is lifted, please submit a written request for re-evaluation to the Agency.

however, strenuously challenge the holdings of the bankruptcy and district courts that in enacting section 525, Congress intended to prohibit the sort of temporary suspension of mortgage financing involved in this case.

PHFA correctly notes that the express terms of the statute support its position; a HEMAP loan simply is not a "license, permit, charter, franchise or other similar grant." Indeed, it seems perfectly clear that the items enumerated are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor. Thus, a "similar grant" should be given the same meaning. Furthermore, as the Court of Appeals for the Second Circuit also has recognized,

> [a] credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants.... Although the exact scope of the items enumerated may be undefined, the fact that the list is composed solely of benefits conferred by the state that are unrelated to credit is unambiguous.

*In re Goldrich,* 771 F.2d 28, 30 (2d Cir. 1985) (section 525 does not prevent government denial of student loan based upon default in repayment of prior discharged loan).[2] It follows that if a credit guarantee is not a "similar grant," neither is a loan.

The district court, however, did not adopt the above reasoning, as it concluded that a narrow interpretation of section 525 would defeat its purpose, as revealed by its legislative history, to avoid discriminatory practices by governmental entities so that debtors could get the fresh start provided by the Bankruptcy Code. 93 B.R. at 355 (citations omitted). The obvious difficulty with the district court's conclusion is that when an unambiguous statute is interpreted to mean what it says, the interpretation is not narrow. Furthermore, while we agree

with the district court that Congress' intent is controlling, the legislative history of section 525 does not reveal a Congressional objective to include the sort of loans involved here within the law's scope.

Section 525 was passed to codify the holding in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), that a state law requiring the suspension of a driver's license until payment of an accident-related judgment, even though the judgment was discharged in bankruptcy, violated the "fresh start" policy of the Bankruptcy Code. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5867 [hereinafter Senate Report]; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6322 [hereinafter House Report]. Both the Senate and House reports indicate that "the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination." Senate Report at 81, 1978 U.S.Code Cong. & Admin.News at 5867; House Report at 367, 1978 U.S.Code Cong. & Admin.News at 6323. However, the reports elaborate,

> [t]his section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

Senate Report at 81, 1978 U.S.Code Cong. & Admin.News at 5867; House Report at 367, 1978 U.S.Code Cong. & Admin.News p. 6323. As the *Goldrich* court stated, the foregoing statement indicates that "[w]hile Congress may have intended to allow expansion of the scope of protection described

---

**2.** The plaintiffs attempt to characterize HEMAP loans as having "the elements of both a grant and a loan," noting that repayment "may be deferred for many years and the interest rate is below the market rate." Brief at 8. However, while student loans frequently have similar attributes, the *Goldrich* court apparently viewed them as loans, not grants, for purposes of sec-

tion 525. 771 F.2d at 30. Moreover, even if the plaintiffs' characterization is apt, only part of their obstacle is overcome; the statute further requires that the "grant" resemble a license, permit, charter or franchise. As stated above, mortgage financing does not resemble these grants.

in section 525, it clearly also intended that such expansion would be limited to situations sufficiently similar to *Perez* to fall within the enumeration." 771 F.2d at 30.[3] *See also In re Exquisito Services, Inc.,* 823 F.2d 151, 153 (5th Cir.1987) ("better approach" is to read legislative history narrowly and apply section 525 "only to situations analogous to those enumerated in the statute.")

Despite these indications that Congress meant what it said when it limited the scope of section 525 to specified types of transactions, some courts have construed the law as having quite a broad reach, focusing on "the Congressional policy of granting the debtor a fresh start." *Matter of Rose,* 23 B.R. 662, 667 (Bkrtcy.D.Conn. 1982). *See, generally, In re Rees,* 61 B.R. 114, 120–22 (Bkrtcy.D.Utah 1986) (collecting cases). However, even if we were likewise inclined to venture beyond the confines of the language of the statute, we do not believe that the suspension of mortgage financing at issue in this case undermines the "fresh start" policy of the Code. While the challenged provision of HEMAP suspends mortgage assistance during bankruptcy because foreclosure is prohibited, assistance can be reinstated once the stay is lifted if foreclosure is still threatened; hence, the debtor's fresh start is not affect-

ed.[4] *Compare Matter of Rose,* 23 B.R. 662 (unqualified denial of mortgage loan by state housing agency based solely upon past bankruptcy would violate section 525). Although plaintiffs complain that "late charges and other foreclosure costs" accrued while loan payments were suspended, brief at 22, the fresh start policy does not require the State to insulate a debtor from any and all adverse consequences of a bankruptcy filing.

Ultimately, what the plaintiffs seek is a requirement that PHFA use the limited resources in the Homeowner's Emergency Mortgage Assistance Fund to continue paying their mortgages, to the possible detriment of other financially distressed homeowners, when foreclosure on their own homes is prohibited under the Bankruptcy Code. For the reasons set forth above, we decline to grant such relief.[5]

## B. *Violation of Automatic Stay*

■ Section 362 of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Sec-

---

3. Moreover, the reports further note that "[t]he section is not so broad as a comparable Section proposed by the Bankruptcy Commission ... which would have extended the prohibition to any discrimination, even by private parties." Senate Report at 81, 1978 U.S.Code Cong. & Admin.News at 5867; House Report at 367, 1978 U.S.Code Cong. & Admin.News at 6323. The narrowing of the statutory scope apparently was prompted by the credit industry's concern that the law would prohibit a private loan company from considering a past bankruptcy in determining whether to extend credit. *See, generally, In re Rees,* 61 B.R. 114, 117–18 (Bkrtcy.D. Utah 1986). Significantly, however, the statute was redrafted not only to limit its prohibition against discrimination to governmental units, but also to limit its scope to particular types of discrimination. *See, e.g.,* Hearings on S. 235 and S. 236 Before the Senate Subcomm. on Improvements in Judicial Machinery, Part II, 94th Cong., 1st Sess. at 486 ("Section 4–508, seeking to protect debtors discharged in bankruptcy from 'discriminatory treatment,' is too broadly worded. Section 4–507 preventing revival or reaffirmation of a discharged debt pro-

vides all the protection needed except for the unusual situation presented by the denial or suspension of licenses....")

4. While the plaintiffs assert that they "were exposed to foreclosure actions by the mortgagees PHFA had stopped paying," brief at 5, they do not explain how foreclosure could be accomplished when the automatic stay was in effect, and do not claim that any foreclosures were in fact started. Moreover, the plaintiffs' assertion that "they were uncertain whether PHFA would reinstate them in the HEMAP program," brief at 5, is undermined by their observation elsewhere in their brief that if HEMAP's eligibility requirements are met, "benefits *must* be granted." Brief at 8 (emphasis in original). As discussed above, the record indicates that each of the named plaintiffs was in fact determined to be reeligible for benefits once the stay was lifted.

5. Accordingly, it is unnecessary to address PHFA's alternative argument that it did not violate section 525 because it did not suspend HEMAP benefits "solely because" of the plaintiffs' bankruptcy filings.

tion 541, in turn, broadly defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Both the bankruptcy court and the district court held that prospective HEMAP loan payments constituted "property of the estate" for purposes of section 362(a)(3), and that PHFA therefore violated the automatic stay by suspending such payments. The courts analogized HEMAP benefits to energy assistance payments, which "have been regularly held to be 'property' of the debtor's estate." 93 B.R. at 356 (citing *Morris v. Philadelphia Electric Co.*, 45 B.R. 350 (Bkrtcy.E.D.Pa.1984); *In re Maya*, 8 B.R. 202 (Bkrtcy.E.D.Pa.1981)).[6] They further reasoned that holding the suspension of HEMAP benefits subject to the automatic stay constituted sound bankruptcy policy by "removing a real threat which 'hangs over a debtor's head' that applying for a personal reorganization under Title 7 could result in the termination of vitally needed assistance payments from the state." 93 B.R. at 356; *see also* 76 B.R. at 407 ("the HEMAP benefits in issue here are vital to the Plaintiffs to retain their shelter.")

It is unnecessary to decide whether the prospective mortgage loan payments involved in this case constitute "property of the estate" for purposes of the automatic stay provisions of the Bankruptcy Code,[7] as the intention of Congress in enacting section 362(a)(3) cannot be considered in isolation without regard for the rest of the Bankruptcy Code. Because PHFA's commitment to provide mortgage assistance plainly constitutes an unassumable executory "contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor" under sections 365(c)(2) and 365(e)(2)(B) of the Code, and because the automatic stay provision of the Code is inapplicable to such a commitment, we hold that the automatic stay was not violated in this case.[8]

Section 365(c)(2) of the Code precludes the assumption or assignment of an executory "contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." Relatedly, section 365(e)(2)(B) provides that such contracts are excepted from the general rule prohibiting the termination of contracts because of a bankruptcy filing. As one commentator has summarized, "[t]he Code provides explicitly that there is no way that a debtor can assume [a financing] agreement and thus compel its lender to continue to advance funds during reorganization." Levit, *Use and Disposition of Property Under Chapter 11 of the Bankruptcy Code: Some Practical Concerns*, 53 Am.Bankr.L.J. 275, 276 (1979). Of course, the same is true when a debtor is in liquidation. *See* 11 U.S.C. § 103(a). PHFA's commitments to plaintiffs are executory contracts to "make a loan or extend other debt financing" and thus are

---

**6.** We note that in contrast to the instant case, both *Morris* and *Maya* involved actions by debtors against their utility-creditors, which had used post-petition assistance payments to offset pre-petition debts.

**7.** *But cf. Creative Data Forms, Inc. v. Pa. Minority Bus. Dev.*, 72 B.R. 619 (E.D.Pa.1985), *aff'd*, 800 F.2d 1132 (3d Cir.1986) (unpaid balance of escrowed loan provided by Pennsylvania Minority Business Development Authority to minority business not "property of estate" under section 541 where terms of escrow agreement were not met and Authority did not consent to release funds.)

**8.** The district court declined to address the pertinence of section 365 because PHFA did not raise its applicability before the bankruptcy court. 93 B.R. at 357. However, because the purely legal question of section 365's applicability is inextricably intertwined with the issue of whether the automatic stay was violated in this case, we will address it. *See, e.g., Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1378 n. 8 (9th Cir.1985). Indeed, in the circumstances of this case we can hardly do otherwise. As noted above, the plaintiffs seem to have suffered very little, if any, damage. Thus, the principal consequence of this litigation will be its prospective impact on the defendants' practices with respect to the class of persons who have applied for or been awarded HEMAP benefits "or will do so in the future." We would be extremely reluctant to bar the defendants in the future from taking steps required by Pennsylvania law and authorized by the Bankruptcy Code to protect the HEMAP fund.

terminable by PHFA under section 365(e)(2)(B).[9]

The question remains whether the automatic stay applies even though the Code expressly permits the post-filing termination of an executory contract to make a loan. We conclude it does not.[10] Section 365(e)(2)(B), unequivocally and without qualification, provides for the termination of a contract to make a loan after the commencement of a bankruptcy case. To hold that such termination is, at the same time, stayed under section 362 would be at worst anomalous, and at best an imposition of a pro forma requirement that the creditor must ask for what the Code plainly grants him. In short, we are unwilling to grant "a protection or benefit pursuant to 11 U.S.C. § 362 when the [contrary] intent of Congress appears clear at 11 U.S.C. § 365." *In re New Town Mall*, 17 B.R. 326, 329 (Bkrtcy.D.S.D.1982). *See also* H. Buschman, *Benefits and Burdens: Post–Petition Performance of Unassumable Executory Contracts*, 5 Bankr.Dev.J. 341, 348–49 (1988) (termination of non-assumable executory contracts is not barred by automatic stay); 2 Collier on Bankruptcy, ¶ 365.06, at 365–48 (15th ed. 1987).

We recognize that courts reaching a contrary conclusion have reasoned, in part, that "bringing these kinds of contracts within the ambit of the automatic stay ensures that the legal question of whether a particular contract may be terminated will be decided in the proper forum, after a full briefing by the parties, rather than by a nondebtor party acting unilaterally and perhaps erroneously." *In re Wegner Farms Co.*, 49 B.R. 440, 445 (Bkrtcy.N.D. Iowa 1985); *see also In re Computer Communications, Inc.*, 824 F.2d 725, 730–31 (9th Cir.1987). We believe, however, that in the bankruptcy context, as in other legal contexts, a post-hoc challenge suffices to protect relevant interests.[11]

Moreover, the relevant policy underlying the automatic stay—giving the debtor a "breathing spell" to permit a repayment plan [12]—is not affected in holding the stay inapplicable under the facts of this case, despite the contrary conclusions of the bankruptcy and district courts. Quite simply, the continuation of HEMAP payments during bankruptcy is *not* "vital to Plaintiffs to retain their shelter," 76 B.R. at 407, since the mortgagees are precluded from foreclosing during that time.[13]

**9.** The legislative history of section 365 provides: Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6303–04. In this case, performance was due on both sides at the time assistance was terminated; PHFA was to have advanced payments to plaintiffs' mortgagees, and plaintiffs were obligated to repay PHFA. Accordingly, PHFA's commitment to plaintiffs plainly was "executory." *Compare In re Whatley*, 16 B.R. 394, 397–98 (N.D.Ohio 1982).

**10.** Our recent decision in *Matter of West Electronics, Inc.*, 852 F.2d 79 (3d Cir.1988), does not mandate a contrary holding. There, we merely assumed without deciding that the creditor had to seek relief from the automatic stay before terminating an unassumable contract. *Id.* at 82.

**11.** Of course, the nondebtor party acting unilaterally may want to make a motion for relief from the automatic stay in a doubtful case in order to avoid liability for *ex parte* action which is later determined to be unlawful. But where, as here, the party acts without court order it should not be liable if its actions are lawful simply because it did not have advance authorization for what it did. The situation is no different from that in which a party refuses to perform under a contract because it believes the other party in breach. While a declaratory judgment would no doubt be comforting, if one party's breach justifies the second's nonperformance, the second may take a chance and not perform when it perceives the first breached. In fact, people constantly take their chances as to their legal rights and act without court orders.

**12.** *See, e.g.,* H.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6296–97.

**13.** Moreover, to the extent that any late charges and costs accrued during this time, we note that the "breathing spell" is designed to provide a respite "from the threat of *immediate action* by creditors, such as foreclosure or a lawsuit," *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 86 (3d Cir.1988) (emphasis added), rather than these sorts of costs.

## C. *Conclusion*

Accordingly, we conclude that PHFA's suspension of HEMAP loan payments during the pendency of bankruptcy proceedings violated neither the automatic stay provision nor the anti-discrimination provision of the Bankruptcy Code. Because the plaintiffs' 42 U.S.C. § 1983 claim is dependent upon a finding of a Code violation, it also must fail. We therefore will reverse the judgment of the district court and will remand the matter for entry of a judgment in favor of the defendants.