**In re James CLEASBY and Delores Cleasby, Debtors.**

**UNITED STATES of America, Appellant,**

v.

**James CLEASBY and Delores Cleasby, Appellees.**

**No. 91-C-1043-C.**
**Bankruptcy No. EU11-90-03191.**

United States District Court,
W.D. Wisconsin.

April 9, 1992.

Christa A. Reisterer, Asst. U.S. Atty., Madison, Wis., for U.S.

Peter E. Grosskopf, Eau Claire, Wis., for James E. Cleasby.

## OPINION AND ORDER

CRABB, Chief Judge.

This is an appeal by the United States on behalf of the Farmers Home Administration (FmHA) from a final order of the United States Bankruptcy Court for the Western District of Wisconsin, pursuant to 28 U.S.C. § 158(a). FmHA contends that the bankruptcy court erred in two respects: first, in finding that FmHA discriminated unlawfully against the debtors in violation of 11 U.S.C. § 525 when it excluded them from participation in the recovery buyout program of the 1987 Agricultural Credit Act; and second, in ordering FmHA to reconsider the debtors for eligibility in the program without regard to their 1983 bankruptcy filing and in derogation of this court's July 31, 1990 order finding the debtors ineligible to participate. The debtors assert that the bankruptcy court did not err in either respect, and thus FmHA must

reconsider their application for debt restructuring.

I conclude that the bankruptcy court erred in finding unlawful discrimination under 11 U.S.C. § 525. Eligibility for debt restructuring under the Act falls outside the purview of § 525(a). Furthermore, the record does not support the bankruptcy court's conclusion that the agency discriminated against the debtors *solely* because of their status as debtors under the bankruptcy code. Also, I conclude that the bankruptcy court erred in ordering FmHA to reconsider debtors for eligibility in the recovery buyout program.

This court reviews a bankruptcy judge's conclusions of law *de novo*. *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990). It must apply a clearly erroneous standard of review to the bankruptcy court's determinations of disputed facts. In this case, however, the bankruptcy court made no findings of fact; the only issues are legal ones.

The documentary record submitted by the parties reveals the following:

In March 1983, the debtors, James and Delores Cleasby, filed for relief pursuant to Chapter 7 of the Bankruptcy Code. They received a discharge in June 1983, which eliminated their personal liability on the debt. They retained title to the property securing their debt to FmHA. In late 1988 or early 1989, they applied for the "recovery buyout" option under the debt restructuring provisions of the 1987 Agricultural Credit Act. While their application was pending, FmHA initiated foreclosure proceedings in this court against their real property.

In an order dated July 31, 1990, I held "that because the Cleasbys have no personal liability to the FmHA, they are not 'borrowers' under 7 U.S.C. § 1991(b)(1), and cannot utilize the debt restructuring programs of the Agricultural Credit Act to avoid foreclosure of their property." *United States v. Cleasby*, 745 F.Supp. 546 (W.D.Wis.1990). The Clerk of Court entered judgment of foreclosure and sale in the amount of $397,261.37 on August 24, 1990. A foreclosure sale was scheduled for November 16, 1990. On November 14, 1990, the debtors filed a new proceeding in the bankruptcy court, this time for relief pursuant to Chapter 11 of the Bankruptcy Code.

Subsequently, the debtors submitted a plan based on their proposal that the bankruptcy court accept a recovery buyout under the debt restructuring programs of the Agricultural Credit Act as an executory contract under 11 U.S.C. § 365. They moved to amend their Chapter 11 plan in August 1991 and moved to amend their § 365 motion in September 1991. FmHA objected to the plan and to the amendments.

On October 7, 1991, the bankruptcy court held a hearing on the debtors' amended Chapter 11 plan and the amended motion to approve the recovery buyout. The bankruptcy judge denied confirmation of the plan, but found that FmHA's rejection of the debtors' recovery buyout application was a violation of 11 U.S.C. § 525. In a final order entered on October 28, 1991, the bankruptcy court directed FmHA to reconsider the debtors' eligibility for participation in the recovery buyout program, and continued the debtors' payments conditioning the automatic stay, with the stay to remain in effect pending further determination by the court.

OPINION

A. *The Scope of 11 U.S.C. § 525*

 The bankruptcy judge based his ruling on his understanding that 11 U.S.C. § 525 prohibits the government from denying bankrupts the benefits of the loan restructuring provisions of the Agricultural Credit Act of 1987. With respect, I believe he has misconstrued the statute. It is true that § 525(a) is designed to give protection from discriminatory treatment by a governmental unit to persons who have been debtors under the Bankruptcy Code or bankrupt or debtors under the prior Bankruptcy Act. *See* 3 *Collier on Bankruptcy* ¶ 525.01 (Lawrence P. King ed., 15th ed. 1991). The section provides in pertinent part: "[A] governmental unit may not

deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant ..." belonging to a person, "solely because" that person has been a debtor under the Code. 11 U.S.C. § 525(a). However, § 525(a) does not prohibit governmental units from making credit decisions on the basis of a prior discharge in bankruptcy. Applications for credit are distinct from applications for a "license, permit, charter, franchise, or other similar grant." *Id.* This point was recognized by the Court of Appeals for the Second Circuit:

> Significantly, section 525 does not promise protection against consideration of the prior bankruptcy in post-discharge credit arrangements. We believe that this omission was intentional. A credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants. Had Congress intended to extend this section to cover loans or other forms of credit, it could have included some term that would have supported such an extension. We are reluctant to probe beyond the plain language of the statute. Although the exact scope of the items enumerated may be undefined, the fact that the list is composed solely of benefits conferred by the state that are unrelated to credit is unambiguous.

*In re Goldrich,* 771 F.2d 28, 30 (2d Cir. 1985). If a credit guarantee is not a "similar grant," neither is a loan. *Watts v. Pennsylvania Housing Finance Co.,* 876 F.2d 1090, 1093 (3rd Cir.1989). In *Watts* the court of appeals noted that "the items enumerated [in § 525] are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor. Thus, a 'similar grant' should be given the same meaning." *Id.* Debt restructuring under the Act resembles an extension of credit or a loan much more than it resembles a corporate charter or a driver's license. Even under the generous provisions of the Act, financial assistance does not constitute a "similar grant" within the scope of § 525.

There is an additional difference between the primary loan service program and the grants enumerated in § 525. Participation in the program generates mutual obligations between FmHA and farmers with distressed loans. For instance, the program offers several restructuring options to eligible borrowers, including rescheduling of payments, interest rate reduction, and write down of principal. 7 U.S.C. § 1991(b)(3). Such mutual obligations are not present in the grants enumerated in § 525, or in the examples provided in the section's legislative history. *But see In re Exquisito Services, Inc.,* 823 F.2d 151 (5th Cir.1987) (holding that renewals of government contracts are covered by § 525).

■ Congress left to the courts the task of defining the scope of § 525 consistent with "sound bankruptcy policy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 81, *reprinted in* 1978 U.S.C.C.A.N. 5867. The debtors urge this court to expand the scope of § 525, but they have not shown that it would be sound policy to bar governmental units from considering a prior bankruptcy filing when evaluating an application for a loan or loan guarantee. I agree with the position taken by other courts limiting the application of § 525 "to situations analogous to those enumerated in the statute." *In re Exquisito Services, Inc.,* 823 F.2d at 153. *See also Watts v. Pennsylvania Housing Finance Co.,* 876 F.2d at 1094; *In re Goldrich,* 771 F.2d at 30.

■ Consideration of a past discharge in determining whether to provide credit to the debtor does not violate § 525(a) to the extent that the decision is part of an overall evaluation of purely economic criteria, such as future financial responsibility. 3 *Collier on Bankruptcy* at ¶ 525.02; House Report at 6126. In *Goldrich,* 771 F.2d at 31, the Court of Appeals for the Second Circuit emphasized that "[w]here the decision at issue concerns a post-discharge application for credit, evaluation of financial responsibility is crucial." I conclude, therefore, that it was permissible for the government to consider the debtors' lack of personal liability on their debts to FmHA.

Although the debtors were denied restructuring because of their status as former borrowers discharged in bankruptcy, such treatment is permissible under § 525. *Lee v. Yeutter*, 106 B.R. 588, 592 (D.Minn. 1989), *aff'd*, 917 F.2d 1104 (8th Cir.1990). Determination of eligibility for the recovery buyout program "is akin to a decision relating to the further extension of credit" and thus falls outside the scope of the statute's enumeration. *Id.* "Expanding" the statute's scope to cover applications for credit would be a significant policy decision. Such a decision should be made by Congress, not the courts.

### B. The FmHA Interpretation of Eligibility Requirements

Even if the bankruptcy court were correct in its view that § 525 covers credit applications to governmental entities, it does not follow that the debtors must be considered for eligibility in the recovery buyout program. The bankruptcy court erred in finding that the FmHA interpretation of the Act excluded the debtors from participation in restructuring solely on the basis of their bankruptcy, in contravention of 11 U.S.C. § 525. In fact the debtors were excluded from restructuring because they are no longer "borrowers" as required by the Act.

■ The debtors seek restructuring under the Act's primary loan service program, 7 U.S.C. § 1991(b)(3). The program is available only to "borrowers," a term defined by Congress as "any farm borrower who has outstanding obligations to the Secretary under any farmer program loan, without regard to whether the loan has been accelerated, but does not include any farm borrower all of whose loans and accounts have been foreclosed on or liquidated, voluntarily or otherwise." 7 U.S.C. § 1991(b)(1).

The "borrower" requirement applies to all farmers who seek restructuring. Farmers who file for relief under the code and who apply for restructuring will be considered by the FmHA, but those who fail to qualify as "borrowers" will be denied participation in the program. The Act does not contain a *per se* exclusion of Chapter 7 debtors, and it does not bar all farmers who file bankruptcy petitions from the recovery buyout program. Under FmHA's regulations, the FmHA excludes from the primary loan service programs farmer applicants whose personal liability to the agency has been discharged in bankruptcy, but who still own property subject to a lien in favor of FmHA. These applicants are not considered "borrowers".[1] 7 C.F.R. § 1951.907(d). "The Secretary [of Agriculture] reasoned that if a farmer received a discharge of his FmHA loan, he no longer owed an outstanding 'personal obligation' to the Secretary and thus could not be a borrower within the meaning of the Act. 53 Fed.Reg. 35,652 (1988)." *Lee v. Yeutter*, 917 F.2d 1104, 1106 (8th Cir.1990). The Court of Appeals for the Eighth Circuit upheld these regulations as a reasonable interpretation of the Act. *Id.* at 1108.

■ The bankruptcy court erred in ordering the agency to reconsider the debtors' application for debt restructuring. I had determined previously that these debtors are not "borrowers" under this definition. *United States v. Cleasby*, 745 F.Supp. at 550. It was the law of the case that the debtors were not eligible for debt restructuring. A bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the code. 11 U.S.C. § 105(a). In this instance, however, the court's order did not carry out the provisions of the code; rather, it proceeded from the bankruptcy court's erroneous interpretation of the code.

### ORDER

IT IS ORDERED that the bankruptcy court's judgment in favor of the debtors is

---

1. *See Collier Farm Bankruptcy Guide* ¶ 1.02[3][c] (Lawrence P. King ed., 1991). I had determined previously that the FmHA interpretation of 7 U.S.C. § 1991(b)(1) is a rational one. *United States v. Cleasby*, 745 F.Supp. at 549. Although alternative constructions may exist that would offer restructuring to farmers whose debts have been discharged, FmHA was free to choose any rational interpretation consistent with the statute.

REVERSED and its order directing reconsideration of the debtors' eligibility for debt restructuring is VACATED.